AAV-Corson Service Co. *v.* Smith, d.b.a. Hop Bar, et al.

(No. 81-CIV-218—Decided December 1, 1981.)

Court of Common Pleas of Clark County.

*Mr. Roy D. Boucher,* for plaintiff.

*Cole, Acton, Harmon & Dunn Co., L.P.A.,* and *Mr. George W. Cole,* for defendants.

Lorig, J. This cause came on for trial by the court without a jury and, all questions of fact having been tried by the court and defendant Harvey Smith, Jr., having requested both orally in open court, and in writing, that the court state in writing the conclusions of fact found separately from the conclusions of law, all in accordance with Civ. R. 52, such findings of fact and conclusions of law are hereby set forth as follows:

## I
### Findings of Fact

AAV-Corson Service Company, the plaintiff in this action, is a vending machine company whose principal office is located in Dayton, Ohio and which also does business in Springfield and other parts of Clark County, Ohio. AAV-Corson Service Company is a division of the AAV Companies, the parent corporation, whose principal office is located at Cleveland, Ohio, and which does business throughout the state of Ohio and also in the states of Michigan, Kentucky, Indiana, Illinois, Pennsylvania and Florida. AAV-Corson Service Company installs and operates coin-operated vending machines in hundreds of locations in the Dayton and Springfield areas, including cigarette machines, amusement devices (electronic games, pin-ball machines, pool tables, etc.), and coin-operated music equipment. It has as many as four hundred juke boxes, seven hundred pin-ball machines and three hundred fifty cigarette machines installed at various locations throughout the Dayton Division, and approximately one-third of those machines are located in the Springfield, Ohio area. The parent company, the AAV Companies, installs and operates literally thousands of such coin-operated vending machines throughout Ohio and other states. Its total sales in 1980 exceeded $79,000,000. Its common stock is listed on the American Stock Exchange.

Defendant Harvey Smith, Jr. is an individual engaged in operating a neighborhood bar as a sole proprietor, the bar being known as the "Hop Bar" and being located at 213 Lyle Avenue just outside the corporate limits of the city of Springfield. Defendant Hughes Music Co. is a vending company operating locally in the Springfield, Ohio area and it is a competitor of AAV-Corson Service Company.

On March 21, 1980 the plaintiff, AAV-Corson Service Company, and defendant Harvey Smith, Jr., d.b.a. Hop Bar, entered into two written contracts, one

providing that the plaintiff would have the sole and exclusive right to install and operate a cigarette machine in the Hop Bar and under the terms of which defendant Smith would receive $.08 per each package of cigarettes sold, and the other contract provided that the plaintiff would have the sole and exclusive right to install coin-operated music equipment and amusement devices in the Hop Bar and defendant Smith would receive a commission of fifty percent of the proceeds of the coin-operated equipment. Both the cigarette contract and the music-games contract provided that the terms of the contracts would be for five years from the date of execution thereof. No coin-operated vending equipment other than AAV's was to be installed in the Hop Bar during the term of the contracts.

As part consideration for defendant Smith's entering into the subject contracts with the plaintiff vending company, the plaintiff not only agreed to pay said defendant $.08 per each package of cigarettes sold and fifty percent of the gross proceeds from the games and music machines, the plaintiff also advanced the sum of $1,500 to defendant Smith at ten percent per annum simple interest, and plaintiff also furnished, at its own cost, all cigarette and music record inventory, as well as pool sticks, chalk, pool balls, etc. Further, the plaintiff vending company provided maintenance and repair service for all of its equipment. Further, because of the high investment cost to the plaintiff vending company for the coin-operated machines furnished by it to the Hop Bar, the vending company reserved the right in its contracts to determine the number, placement and type of vending machines to be installed, the object being to install and operate equipment which would prove profitable to both parties.

Sometime during the summer of 1980, after the subject contracts had been in force for several months, defendant Harvey Smith, Jr. asked a representative of AAV to get him a poker machine, and defendant Smith was advised by the AAV representative that "Cleveland" (the main office of the AAV Companies at Cleveland, Ohio) had issued orders to all of its Ohio divisions that no poker machines were to be installed at any AAV location because there was a serious question as to whether or not such machines were legal in the state of Ohio, or constituted gambling machines. In any event, whether legal or illegal, AAV refused to honor defendant Smith's request for a poker machine, and defendant Smith called defendant Hughes Music Co. and towards the end of August 1980 that vending company actually installed a poker machine in the Hop Bar. AAV's Springfield representative advised defendant Harvey Smith, Jr. that he was violating his contracts with AAV by having the poker machine installed but defendant Smith refused to have it removed.

On January 5, 1981, after the exclusive vending contracts had been in force a little over nine months, defendant Harvey Smith, Jr. ordered the plaintiff, AAV-Corson Service Company, to remove all of its coin-operated equipment from the Hop Bar, said defendant having permitted Hughes Music Co. to install and operate not only the above-mentioned poker machine but also coin-operated cigarette, music, pool table and other vending equipment. At the time that defendant Smith ordered plaintiff AAV-Corson Service Company to remove its equipment from his bar, the two contracts still had more than four years to run. In Paragraph 8 of each of the subject contracts there is a provision that, in the event of a breach by the customer, the damages suffered by the company will be uncertain and difficult of ascertainment and the plaintiff and said defendant agreed that the customer would pay to the company certain stipulated damages computed in accordance with clearly set forth provisions in the contracts. In the case of a breach of the cigarette vending contract, the customer agreed to pay to the company

an amount of money equal to the product of multiplying $.08 times the product of the weekly average number of cigarette packages sold by the company through the cigarette vending machine on the subject premises during the six-month period immediately preceding the month in which the contract is terminated, times the number of weeks remaining in the term of the contract. In the case of coin-operated vending equipment other than cigarettes, the customer agreed to pay to the company, in the event of a breach of contract, an amount of money equal to the product of multiplying seventy-five percent times the product of the average weekly collections from the coin-operated equipment in the bar, exclusive of the customer's fifty percent commissions, for the six-month period immediately preceding the month in which the contract was terminated, times the number of weeks remaining during the term of the contract.

Mr. Jack Felkley, plaintiff's Dayton Division credit manager and office manager, made the computations with respect to the amounts of stipulated damages and he testified in great detail as to the exact method and manner in which such computations were made. The fact is that his computations were made in strict accordance with the provisions of Paragraph 8 in each of the two contracts, and the stipulated damages for the breach of the cigarette vending contract are $2,580.45 and the stipulated damages for the breach of the music-games vending equipment contract are $11,495.31 and, therefore, the total stipulated damages are $14,075.76.

Defendant Harvey Smith, Jr. admitted that he executed and entered into the "Vending Agreement" regarding the sale of cigarettes and the "Coin Operated Equipment Agreement" regarding the operation of music and games vending equipment. Defendant Smith, his wife, and a part-time employee all testified that plaintiff failed and refused to furnish various game machines which they asked for; they testified, further, that the juke box did not operate properly most of the time; and they testified, further, that between Christmas and New Year's at the end of 1980 the plaintiff allowed the cigarette machine to become empty, except for certain menthol cigarettes, and that was the last straw which caused defendant Smith to order the plaintiff to remove all of its equipment from the Hop Bar and to replace it with defendant Hughes Music Co.'s equipment. Plaintiff, on the other hand, presented detailed documentary evidence by way of all of the service call records showing each and every service call received by the plaintiff at its office during the regular daytime business hours, and also showing all of the service calls received by its answering service after regular daytime business hours. Plaintiff's records show that there was only one service call received from the Hop Bar during the 1980 holiday season and that was a juke box service call received on December 30. Further, defendant Harvey Smith, Jr. himself testified that "the trouble all started in September." Plaintiff's witnesses testified that neither the number nor the nature of the service calls received from the Hop Bar was unusual or out of the ordinary when compared to its approximate five hundred locations. Defendant Smith admitted that a representative of the plaintiff personally came to the Hop Bar on the average of at least once a week. Both defendants, Harvey Smith, Jr., d.b.a. Hop Bar, and Hughes Music Co., claim that there was a failure of consideration for the promises made by defendant Smith as set forth in the two contracts and that, therefore, the contracts were not binding on either defendant. The defendants also insist that the contracts are not enforceable because of a lack of mutuality, the argument being that the contracts permit the vending company to do certain things exclusively, such as determine the number and nature of vending machines to be installed in the

location. The defendants also argue that the liquidated damages clauses contained in the contracts provide for the imposition of a penalty and are, therefore, unenforceable. The defendants also argue that the liquidated damages provisions bear no reasonable relationship to any actual damages sustained by the plaintiff as the result of any breach of contract by defendant Smith and that, therefore, such provisions are unenforceable.

The court finds without question that there was a five-year contract entered into by the parties in 1980 giving the plaintiff the exclusive right to place a cigarette machine on defendant Smith's premises, there was a five-year contract entered into by the parties at the same time giving the plaintiff the exclusive right to place other vending machines on defendant Smith's premises, and there was consideration given for each contract in that there was an initial loan by the plaintiff to defendant Smith and there were provisions for splitting the proceeds of the machines during the course of the five-year contract terms. The court finds, further, that the venture was profitable to both parties during the approximate nine months that the agreements were in effect. The court believes that the contracts would have continued in effect had it not been for the emergence of defendant Smith's desire to have a poker game. The court finds that that precipitated the breach of the contracts by defendant Smith. It seems very clear to the court that, had the plaintiff been willing to supply the poker machine requested by defendant Smith, we probably would be without a suit over this matter. The breach of the contracts by defendant Smith occurred when he had the poker machine brought into his bar.

The court finds, further, that the question raised by the defendants about service on the juke box seemed to be rather insignificant, as far as the evidence discloses. The court finds that the complaints by defendant Smith with respect to service are insignificant and the court finds, further, that the service rendered by the plaintiff in the course of the contracts appears quite good and not in violation under their agreements at all. The court finds that the plaintiff maintained service to the best of its ability and fulfilled its obligations under the contracts clearly. The court finds, further, that defendant Smith ordered the plaintiff to vacate the subject premises, and that brought about this lawsuit.

With respect to the question of damages, the court finds that the damages are somewhat hard to determine, the contracts had over four years to run, they were profitable contracts, the profits varied somewhat from month-to-month, they were somewhat speculative, and the court finds, further, that over four years of profit are lost to the plaintiff by reason of the defendant's breach of the contracts.

The court finds, further, that the stipulated damages clauses in the contracts bear a reasonable and proper relationship to the loss actually sustained by the plaintiff, such actual loss occasioned by defendant Smith's breach of contracts is uncertain and difficult to ascertain, and the court finds, further, that a construction of the contracts as a whole evinces a conscious intention of the parties deliberately to consider and adjust the damages that might flow from any breach thereof.

The court finds, further, that the evidence in this case clearly discloses the manner in which the damage figures were arrived at under the two contracts, and based upon those calculations the court finds, as hereinabove set forth, that the damages are $2,580.45 on the cigarette machine contract and $11,495.31 on the juke box-vending games machine contract, or a total of $14,075.76.

## II
### Conclusions of Law

The court concludes that, as a matter

of law, defendant Smith committed a clear breach of contract when he installed a vending machine other than plaintiff's in his bar at the end of August 1980, and when he ordered the plaintiff to remove all of its equipment from his bar in January 1981, the subject contracts having more than four years to run at that time.

The court concludes, further, that the liquidated damages provisions of the subject contracts represent the amount of damages which the plaintiff and defendant Smith stipulated and agreed should be paid in case of a breach of such contracts, and the court concludes that the liquidated damages provisions in this case are valid and enforceable and are not in the nature of a penalty but, on the contrary, they are valid and enforceable in this case because such provisions are reasonably proportional to the loss actually sustained by the plaintiff, the actual damages occasioned by defendant Smith's breach are uncertain and difficult to ascertain, and a construction of the contracts as a whole evinces a conscious intention of the parties deliberately to consider and adjust the damages that might flow from the breach. This court upholds the stipulated damages provisions of the contracts because such provisions are not on their face unconscionable, the element of fraud is not at all present in this case, and the amount of stipulated damages is reasonably related to the actual loss that was experienced by the plaintiff due to defendant Smith's breach of contracts. The identical stipulated damages provisions in plaintiff's vending machine contracts were upheld in the case of *AAV-Corson Serv. Co.* v. *Gunter* (Apr. 10, 1980), Montgomery C.P. No. 78-2681, unreported. See, also, *Butler County Vending Co.* v. *Pate* (Aug. 5, 1981), Butler App. Nos. CA 79-08-0078 and 0087, unreported.

The law applicable to this case is clearly set forth in 30 Ohio Jurisprudence 3d 137, Damages, Section 128, as follows:

"In order that the stipulation may be construed as one for liquidated damages, rather than as a penalty, it must, according to most cases, appear that the sum stipulated bears a reasonable proportion to the loss actually sustained; that the actual damages occasioned by the breach are uncertain or difficult to ascertain; and most important of all, that a construction of the contract as a whole evinces a conscious intention of the parties deliberately to consider and adjust the damages that might flow from the breach. Unless these three elements appear, the provision, however strongly worded, is likely to be construed as a penalty."

This court having found that the three essential elements are clearly present in this case, it follows that, as a matter of law, AAV's contracts are valid and enforceable. *American Financial Leasing* v. *Miller* (1974), 41 Ohio App. 2d 69. Since the record in this case includes testimony which indicates the difficulty of calculating actual damages, defendant Smith's location being only one of thousands among those served by the AAV Companies, and since AAV's liquidated damages clauses provide a formula based on past revenues which clearly bears a reasonable relationship to actual damages, this court concludes that, as a matter of law, such clauses are valid and enforceable.

As to defendants' claim that the contracts are illegal because of a lack of mutuality of obligation, the court concludes that, as a matter of law, the contracts do contain mutual promises by both parties, those mutual promises constitute valid consideration for each other, and there is sufficient mutuality of obligation between the plaintiff vending company and the defendant bar owner to sustain the validity and enforceability of the subject contracts. In each of the contracts the plaintiff vending company promised to install, operate and service a cigarette machine and other coin-operated equipment at defendant Smith's bar, the plain-

tiff performed that promise, and the defendant promised that, in consideration of the plaintiff's installing, operating and servicing its equipment in the defendant's bar he would not permit any other vending equipment on his premises during the five-year term of the contract. There was, therefore, as a matter of law, clear mutuality of obligation between the parties. 17 Ohio Jurisprudence 3d 501-504, Contracts, Sections 67-68.

The court concludes, as a matter of law, that the plaintiff, AAV-Corson Service Company, division of the AAV Companies, is entitled to a judgment against defendant Harvey Smith, Jr., d.b.a. Hop Bar, in the sum of $14,075.76. The court concludes that, as a matter of law, judgment should be rendered in favor of defendant Hughes Music Co. in this action, on the merits, there being no proof that that defendant induced defendant Harvey Smith, Jr. to breach his contracts with the plaintiff. As this court has found in its separate Findings of Fact, defendant Smith called Hughes Music Co. and asked that company to install its equipment at the Hop Bar, the inducement was made by defendant Smith and not by defendant Hughes Music Co. See *Burton v. Bevan* (Nov. 29, 1972), Clark App. No. 790, unreported.

*Judgment accordingly.*