Avelez Hotel Corporation *v.* Milner Hotels, Inc.

No. 40164          May 7, 1956          87 So. 2d 63

*Albert Sidney Johnson, Jr.,* Biloxi, for appellant.

*Wadlington & Corban,* Biloxi, for appellee.

ETHRIDGE, J.

This is a suit by a landlord against a tenant for alleged breach of a covenant to make during the term of the lease all necessary repairs to a hotel. The lessee's plea in abatement was sustained, because the suit was prematurely brought, and the declaration was dismissed. The plaintiff-lessor appealed, and the sole question is whether this action was prematurely brought because it was instituted prior to the end of the leasehold term.

Appellant Avelez Hotel Corporation filed this action in the Circuit Court of Harrison County on August 3, 1955. The defendant was appellee Milner Hotels, Inc., which, on December 15, 1946, leased from plaintiff the Earle Hotel in Biloxi, for a term of ten years. Hence the suit was filed about a year and four months before the termination of the leasehold estate on December 15, 1956. Since no evidence was heard and the court decided the case on the defendant's plea in abatement, for purposes of this appeal the allegations of fact in the declaration must be accepted as correct.

Plaintiff leased to defendant the lobby, rooms and boiler rooms, together with parking space in the rear of the hotel. Lessee agreed to pay as rent twenty-five per cent of the gross income from the rooms after certain deductions, with a guaranteed minimum of $750 per month. The lease provided:

"The Lessee agrees that it will keep the premsies in a clean, sanitary condition during the term of this lease, and that it will not knowingly use the same for any illegal purpose.

"The Lessee agrees that during the term of this lease it will make all necessary repairs to the interior of the demised premises at its expense and will permit no liens to be created against said leased premises and said repairs shall be and become the property of Lessor.

"The Lessee agrees that at the expiration of this lease, by lapse of time or otherwise that it will yield up and deliver said premises, in like condition as when received, usual wear and tear, damage by fire and the elements, excepted."

\* \* \* \*

"The Lessor shall have the right from time to time during the term of this lease to enter into and upon the leased premises for the purpose of examining the same, and making such alterations, repairs and doing such other things to the premises or equipment as may become reasonably necessary or advisable.

"The Lessor agrees to maintain the roof and exterior of the demised premises in good condition and repair.

"The Lessor agrees that the building and equipment, plumbing, heating plant, elevator and safety devices, etc., are adequate, safe and in good working order at the present time and are not in default of any demands of public authorities, and if at any time during the term of this lease any public authorities demand any changes, alterations or additions to the building or the installation of any safety devices therein or thereto, the same

shall be made and/or installed by and at the expense of the lessor.

"In the event the leased premises or any part thereof shall be damaged or destroyed by fire or other cause so as to be unfit for occupancy, the lessor will promptly restore the same to substantially its former condition and the rent shall be abated in proportion to the space rendered untenantable (sic), provided that in case the leased premises shall be destroyed to the extent of more than one-half of the insurable value thereof, the Lessor may at his option terminate this lease forthwith by written notice to the lessee."

\* \* \* \*

"In the event the Lessee defaults in any of the terms or conditions of this lease, the Lessor agrees to notify the Lessee by registered mail at its principal office in Detroit, Michigan, and allow Lessee thirty (30) days to correct such default."

The declaration charged that on many occasions during the term of the lease plaintiff had asked defendant to make necessary repairs to the interior of the premises at defendant's expense, which it was defendant's duty to do, but that the defendant had failed and refused to do so; and that defendant's failure to make necessary repairs had resulted in considerable damage to the property and loss of rental income, in the amount of $100,000. On December 15, 1954, and on May 31, 1955, plaintiff gave notices in writing to defendant that repairs would have to be made. A list of the alleged needed repairs was attached to the written notice of December 15, 1954. These two letters were made exhibits to the declaration. Another exhibit was a detailed "Survey of the present condition of the Earle Hotel" by R. O. Perry, dated December 1, 1954. This itemized the alleged needed repairs in the lobby, boiler and boiler rooms, halls and ceilings on the second through fifth floors, and in the rooms on those floors. The declaration charged that

the building generally is in a bad state of repair, and has been damaged by reason of defendant's failure to keep in repair, that it would be necessary to rebuild practically every bathroom in the building, and that plaintiff will be deprived of the use of the property and loss of income for about six months while such work is being done. It was averred that defendant was obligated to make such repairs currently, as and when needed, and defendant's failure to do so has greatly damaged plaintiff and the plaintiff's property; that water has run down from one floor to the next and has damaged the plaster, paper and walls, and the structure of plaintiff's building; that plaintiff's loss of rental and the use of the building for the needed repair period will result in damages to plaintiff of $45,000; and that defendant is liable for total damages resulting from its failure to comply with its covenant, for the depreciation and value of plaintiff's reversion in the total amount of $145,000.

Defendant's answer contained a plea in abatement, which averred that the suit was prematurely brought and should be abated, because the tenant is now in possession of the property under the lease, and the term of defendant's lease will not expire until December 15, 1956. The circuit court sustained this plea in abatement and dismissed the cause. It later overruled a motion to set aside this order.

■■ ■ The relevant provisions in the lease are those by which "lessee agrees that during the term of this lease it will make all necessary repairs to the interior of the demised premises at its expense", and "at the expiration of this lease . . . it will yield up and deliver said premises, in like condition as when received, usual wear and tear, damage by fire and the elements, excepted." These clauses constitute in fact two covenants: (1) a covenant to repair, and (2) a covenant to leave in repair at the end of the term. They are generally

treated as independent covenants. 32 Am. Jur., Landlord and Tenant, Section 800.

Under the common law a tenant is required so to care for the leased premises as to prevent injury to the inheritance, in order that the estate may revert to the lessor undeteriorated by the willful or negligent conduct of the tenant. This rule obligates the lessee merely to make such ordinary repairs as are necessary to prevent what would amount to waste. For the lessee is impliedly obligated to use reasonable care to cause no unnecessary injury to the leased premises while using them for the purpose for which they were leased. In determining the extent of the lessee's obligation under express covenants in relation to repairs, the courts will take into consideration his common law liabilities. Anno., 45 A. L. R. 12, 13 (1926); 51 C. J. S., Landlord and Tenant, Section 366b, p. 1077.

The present lease contains express covenants. A distinction is made between a covenant to repair and a covenant to surrender in repair. The former differs from the latter in that it is more extensive in its application. ██ █ A covenant to make repairs from time to time is not satisfied by making repairs at any time before the premises are surrendered. Repairs must be made when needed. 51 C. J. S., p. 1091. ██ █ Hence where a lessee covenants to keep the premises in repair during the term, and at the expiration thereof to surrender them in like condition, and he omits to make the necessary repairs, the landlord's right of action accrues forthwith and he need not wait until the end of the term. 51 C. J. S., p. 1117.

Illustrative of this principle is City Hotel Company v. Aumont Hotel Company, 107 S. W. 2d 1094 (Tex. Civ. App. 1947). Appellee owned a five-story hotel and leased it to appellant for ten years. The lease contained covenants to repair and to leave in repair. Appellee brought the suit before the termination of the lease for

damages for failure to keep and maintain the building in good repair. It was held that the suit was not prematurely brought. The Court said: "The established rule seems to be that when a tenant under this character of contract breaches the obligation to keep the leased premises in a proper state of repair, the landlord may bring suit for resulting damages when the injury occurs, without waiting until the lease terminates. The courts have uniformly observed a distinction between a covenant upon the part of a lessee to keep leased premises in repair, and a covenant to deliver up the premises at the expiration of the term in as good condition of repair as they were at the beginning of the term. A covenant to keep in repair requires the tenant to keep the premises in repair at all times during the term, and if he permits them to get out of repair at any time, the lessor, upon that breach, may sue during the term as for injury to the reversion; whereas, on a covenant to leave the premises in as good condition as he found them, no action will lie against the lessee until the end of the term, for obvious reasons. . . . The contract in this case embraced both a covenant to keep the premises in repair and a covenant to return them in as good condition as they were in at the beginning of the term. Plaintiff brought this action for damages for breach of the first covenant during the term of the lease, as he was authorized to do under the authorities."

There is relatively little difference in terminology between the lease in the City Hotel Company case and the present one. Both provisions are applicable "during" the term of the lease. In City Hotel Company, lessee agreed to keep and maintain the property in a good condition of repair, and to surrender the premises in as good condition as when received, excepting ordinary wear and tear. In the present lease, lessee agreed to make all necessary repairs and to surrender the premises at the end of the term in like manner. Both leases evidence

an intention to make the covenant to repair applicable during the term of the lease. Moreover, defendant's answer admitted that it made repairs during the term of the lease, and gave an itemization of those made by it in the years 1952 to September 1955.

In the Annotation in 45 A. L. R. 12, 24, 79, 80 (1926), entitled "Extent of Lessee's Obligation Under Express Covenant as to Repairs", a number of cases dealing with covenants to make necessary repairs and the time for making repairs are discussed. They support the rule applied here. A later annotation on this subject is in 20 A. L. R. 2d 1331 (1951). Wanamaker v. Butler Mfg. Company, 136 App. Div. 265, 120 N. Y. Supp. 1000 (1910), considered a covenant to make all necessary repairs, and also one to surrender in repair. The court said: "The two covenants must be considered together. Both were in the lease, and should be regarded as put there for some purpose. If defendant's theory were to be regarded as correct, why did the lease contain this covenant as to necessary repairs at all? Why did the parties not insert a provision that neither party should be obliged to make any repairs for the benefit of the other, but any repairs the lessee desired made, it should make at its own expense? The term was a long one—five years. Is it reasonable to suppose the lessor would allow the property to go entirely unrepaired and uncared for, save as the lessee might see fit to repair and care for it, or the lessor should himself look after it? Considering the two covenants together, it seems to me they required the lessee to make such repairs during the term as became necessary to keep the property in a condition so that it could be surrendered in compliance with the covenant as to its condition when surrendered at the expiration of the term. The extent of such repairs would not, in that view, be subject to the dictation of either party, but would be determined by the agreement of the

parties, or in an action between them involving the question.''

■■ ■ Waddell v. DeJet, 76 Miss. 104, 23 So. 437 (1898), is directly in point. The plaintiff, Mrs. DeJet, in 1896, leased her house on the Coast to the defendant, Mrs. Waddell, for a term of ten years and an annual rental of $120, payable monthly. The lease provided that the tenant was: ''to take good care of said property and return the same to Mrs. DeJet in as good order as it now is, ordinary wear and tear and damage by fire, wind, and water excepted, and make, at her own expense, all repairs.'' In 1897 plaintiff-lessor filed her bill in chancery court to cancel the lease. About one year had run on the ten-year term. The bill charged that the lessee had become insolvent and had refused to make any repairs; that the roof was decayed and the house thereby endangered; and other facts were charged which showed ''the necessity for prompt action to prevent serious damage to, if not the absolute destruction of, the property.'' The lessee-defendant demurred to the bill, but the demurrer was overruled. On appeal that action of the trial court was affirmed. .

It was held that the covenants should be construed so as to ascertain the intention of the parties; that if there were extraordinary damage by fire, wind or water the lessee was not obligated to repair; but this would be damage which resulted in an unusual, partial or total destruction. Lessee contended that this exception relieved her from making necessary repairs, but it was stated that to so hold would be to say that the lessor would have to stand by for ten years to see her property ruined for want of necessary repairs. The remedy sought in the Waddell case was to cancel a lease for lessee's failure to make necessary repairs during the term, because of lessee's insolvency. But the Court held that a covenant by the lessee to take good care of the leased property and return it to the lessor in as good

condition as it then was, ordinary wear and tear and damage by fire, wind and water excepted, and to make at her own expense all repairs, obligates the lessee to make all repairs which are necessary to keep the premises in good condition. The lessor has an action during the term of the lease for breach of this covenant. It was further held that "necessary repairs" means "necessary to keep that property, situated as it was, in as good condition as it then was—the condition in which appellant agreed to return it." So Waddell v. DeJet is controlling here. See Anno., 45 A. L. R. 12, 20, 31, 48, 70 (1926). Moreover, the term of the lease was ten years, and it is not reasonable to suppose that lessor would let the property go unrepaired for that period, except as the lessee might desire to repair it.

■■ ■ The trial court erred in sustaining appellee's plea in abatement to the appellant's declaration. The general rule and the holding in Waddell v. DeJet clearly supports this interpretation of the covenant to repair in this lease. The lessee agreed to make all necessary repairs "during the term of the lease." If a breach of this covenant occurs during the leasehold term, the lessor has a remedy. Of course we do not consider whether such a breach occurred, or the extent of appellee's obligations under the covenant. This decision is confined solely to a holding that under the circumstances presented by the declaration and plea in abatement the trial court erred in holding that the suit was prematurely brought.

Reversed and remanded.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.