McKINNEY ET, PLAINTIFFS-APPELLEES, *v.* WHITE SEWING MACHINE CORPORATION, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26758. Decided July 30, 1964.

*Messrs. Thompson, Hine & Flory,* for plaintiffs-appellees.
*Messrs. McAfee, Hanning, Newcomer, Hazlett & Wheeler,* for defendant-appellant.

SILBERT, J. This appeal comes to this court on questions of law from a judgment entered in the Court of Common Pleas of Cuyahoga County on special verdicts rendered in favor of plaintiffs-appellees, E. W. McKinney, Ida McKinney and F. C. McKinney, who shall hereinafter be referred to as plaintiffs. Defendant-appellant, White Sewing Machine Corporation, shall be hereinafter referred to as defendant.

In 1948 plaintiffs leased an industrial parcel located in Cleveland, Ohio, to the Apex Electrical Manufacturing Company for a five-year term along with an option for an additional five-year term which was subsequently invoked so that the term extended from June 15, 1948, until June 15, 1958. At the time of the execution of the lease, Apex paid to plaintiffs the sum of $24,750.000, reflecting the yearly rental of the property, which was to be used as security for the performance of the covenants of the lease. Under the terms of the lease the balance remaining at the end of the fourth year of the second term was to be applied to the payment of rental installments during the fifth and last year of this term. In 1955 Apex subleased the parcel to Hope Metal Products, Inc., until June 14, 1958. In 1956 Apex was merged with the defendant who became successor to the interests of Apex under the lease. On the 19th of August, 1958, Hope Metal Products, Inc., while still in possession of the premises, filed a petition for reorganization under Chapter XI of the United States Bankruptcy Act in the United States District Court for the Northern District of Ohio, Eastern Division. On this date officers of the Bankrupcty Court obtained control of the premises and retained possession until November 24, 1958, at which time possession was given to defendant who in turn relinquished same to plaintiffs.

In the second amended petition plaintiffs set up five causes of action. In the first cause of action it is alleged that defendant had not paid the annual rental of $24,750.00 for the last

year of the lease. In their second cause of action plaintiffs alleged that defendant failed and refused to deliver up and surrender the premises on June 15, 1958, and that they were unable to obtain possession of the same until November 24, 1958; that they did not receive any payment for the use of the premises during this period, which amounted to $13,249.97 predicated on a monthly rental of $2500.00. In their third cause of action plaintiffs alleged that the defendant did not pay water and sewer bills in the amount of $338.76 for the period from June 15, 1958, until November 24, 1958. In their fourth cause of action plaintiffs alleged that defendant failed to deliver the premises in as good condition and repair as the same were at the commencement of the term, "loss by fire, windstorm * * * and ordinary wear and tear excepted;" that defendant failed to restore alterations, failed to maintain public liability insurance and failed to return certain equipment in operating condition, failed to maintain the A. D. T. system, failed and refused to allow no waste and no unnecessary damage and to keep the premises in good repair. To all of which plaintiffs claim they were damaged in the sum of $26,539.28. In their fifth cause of action plaintiffs claim the sum of $16,931.23 for loss of use of the premises and utility expenses during the period required to make repairs.

Plaintiffs pray for judgment on these five causes of action and interest from various dates preceding the commencement of the suit.

In its answer to the second amended petition defendant admitted certain facts in regard to the lease, its terms and conditions, defendant's corporate existence, and other matters, but generally denied the claims alleged and set up certain affirmative defenses arising out of its sublease to Hope Metal Products, Inc. In their reply plaintiffs acknowledged the sublease to Hope Metal Products, Inc., and generally denied defendant's affirmative defenses.

At the conclusion of the trial of the cause, the court submitted eight special verdicts to the jury relating to the second, third, fourth and fifth causes of action while reserving a ruling on the first cause of action as a matter of law.

The jury found for plaintiffs in the amount of $10,825.00 on the second cause of action which reflects the value of the

rental of the premises for the period of June 15, 1958, to November 24, 1958. On the third cause of action the jury found for plaintiffs in the sum of $338.76 for the water and sewer bills incurred from the period of June 15, 1958 to November 24, 1958. On the fourth cause of action, which involved the breach of various covenants in the lease, the jury found for plaintiffs in the sum of $22,153.95. On the fifth cause of action, which was for the loss of use during the period of repair, the jury found for plaintiffs in the sum of $6,187.50.

The court then entered judgment for defendant on the first cause of action as a matter of law and entered judgment for plaintiffs on the remaining causes of action in the amounts as above set out, to which interest was added by the court from the various dates preceding the commencement of this suit. This brought the judgment to $50,546.67, $39,505.21 of which was damages, $11,041.46 being interest awarded by the court. The computation of same is set forth in the findings of fact and conclusions of law that were requested by defendant.

From the judgments so entered and from the overruling of motions for judgment notwithstanding the verdict and new trial, defendant appealed to this court.

The errors assigned by defendant are as follows:

1. The court erred in submitting to the jury, before argument, certain written requests to charge submitted by the adverse party.

2. The court erred in imposing pre-judgment interest on the jury awards.

3. The court erred in the use and submission of special verdict forms.

4. The court erred in overruling appellant's motion for judgment notwithstanding the verdicts on Special Verdict Issues Nos. 4, 6, and 8.

5. The court erred in its general charge to the jury.

6. The court erred in admitting evidence offered by the adverse party over the objection of appellant.

7. The court erred in overruling appellant's motion for a new trial.

8. The special verdicts and judgment are contrary to law and against the weight of the evidence.

As to Assignment of Error No. 1, the special charges in question that were submitted to the jury were as follows:

"No. 9:

"I charge you as a matter of law that under this lease the lessee was required, during the term, to use and occupy the premises in a careful, safe and proper manner, to keep the premises in good repair, and not to commit any waste or any unnecessary damage upon or to the premises."

"No. 11:

"You are further instructed that the exception for 'ordinary wear and tear' does not excuse the defendant from exercising reasonable care in maintaining and protecting the premises during the term of the lease, does not excuse the defendant from any failure to keep the premises in good repair during the term and does not excuse the defendant from responsibility for waste or unnecessary damage to the premises during the term."

The portions of the lease that bear on this discussion state:

"(1) The LESSEE has examined and knows the condition of said premises and has received the same in good order and repair and will keep said premises in good repair, and will keep said premises and appurtenances in a clean, safe and healthy condition according to the ordinances of the City of Cleveland and the direction of public officers, during the term of this lease, at the LESSEE's own expense * * *."

"* * *

"(4) That the LESSEE will deliver up and surrender to the LESSORS possession of the premises hereby leased, upon the expiration of this lease or its termination in any way, in as good condition and repair, as the same shall (sic) be at the commencement of the term and ordinary wear and tear alone excepted, and will deliver to the LESSORS the keys to said premises; that the LESSEE will make replacements of any part of the equipment and fixtures herein mentioned necessitated by use by the LESSEE and ordinary wear and tear, so that the same shall be in operating condition at the time of the surrender of the premises."

Defendant contends that the ordinary wear and tear exception contained in Clause No. 4 should be engrafted on Clause

No. 1 which imposed the duty of the defendant to keep the premises in good repair.

It may be said that the Ohio courts have not passed on this question.

As defendant points out in its brief, we are well aware of the cardinal rule of construction that resolves ambiguities in a lease in favor of the lessee and also that ambiguities in a written instrument must be construed against the person who prepared it.

However, we have carefully read the portions of the lease in question and believe the intention of the parties is manifestly free from any ambiguities. Clause No. 1 requires the defendant to keep the premises in good repair during the duration of the term, that is, to make repairs within a reasonable time when they are needed. On the other hand, Clause No. 4 is limited strictly to such time as the lease is terminated and is in no way concerned with the duration of the lease.

In *Avelez Hotel Corporation* v. *Milner Hotels, Inc.*, 87 So. (2d), 63, lessor sued lessee for breach of covenant to make repairs during the term of the lease. The lease provided that lessee "will make all necessary repairs to the interior of the demised premises at its expense;" and lessee further agreed "at the expiration of this lease, by lapse of time or otherwise, that it will yield up and deliver said premises, in like condition as when received, usual wear and tear, damage by fire and elements, excepted." The lessor claimed that the lessee had permitted water to run down the walls damaging plaster and paper and the structure of the building; and had generally failed to maintain and repair the premises during the term. The court said:

"These clauses constitute in fact two covenants; (1) A covenant to repair, and (2) a covenant to leave in repair at the end of the term. They are generally treated as independent covenants. 32 American Jurisprudence, Landlord and Tenant, Section 800.

"Under the common law a tenant is required so to care for the leased premises as to prevent injury to the inheritance, in order that the estate may revert to the lessor undeteriorated by the willful or negligent conduct of the tenant. This rule obligates the lessee merely to make such ordinary repairs as

are necessary to prevent what would amount to waste. For the lessee is impliedly obligated to use reasonable care to cause no unnecessary injury to the leased premises while using them for the purpose for which they were leased. In determining the extent of the lessee's obligation under express covenants in relation to repairs, the courts will take into consideration his common-law liabilities. * * *

"The present lease contains express covenants. A distinction is made between a covenant to repair and a covenant to surrender in repair. The former differs from the latter in that it is more extensive in its application. A covenant to make repairs from time to time is not satisfied by making repairs at any time before the premises are surrendered. Repairs must be made when needed. 51 C. J. S., Landlord and Tenant, Sec. 368, p. 1091. Hence when a lessee covenants to keep the premises in repair during the term, and at the expiration thereof to surrender them in like condition, and he omits to make the necessary repairs, the landlord's right of action accrues forthwith and he need not wait until the end of the term."

See also, *Waddell* v. *DeJet*, 76 Miss., 104; 23 So., 437, in which the court said:

"To hold otherwise would be to hold that this (lessor) * * * must stand by for ten years and see her property ruined for want of necessary repairs—repairs necessary to its very existence, necessary to keep it as it thus was, which very repairs appellant was bound, by the lease, to make. 'Necessary repairs' must be held here to mean necessary to keep that property, situated as it was, in as good condition as it then was,—the condition in which appellant agreed to return it—and these (repairs) appellants must make or submit to a cancellation of the lease."

The basis for the covenant to keep the premises in good repair during the term is for the preservation of the premises and when property is surrendered to a lessor at the termination of a lease the only loss suffered should be ordinary wear and tear.

We believe that the covenants in question should be construed independently of each other and we, therefore, determine and hold that the covenant to keep the premises in good repair is not subject to and is independent of the surrender covenant which excepts ordinary wear and tear,

Special charges 9 and 11 therefore embody correct principles of law, and this assignment of error is overruled.

As to Assignment of Error No. 2, it is said in 16 Ohio Jurisprudence (2d), 229, Damages, Section 93:

"It has been stated to be the general rule that interest cannot be recovered as a matter of right in an action of contract upon an unliquidated or disputed claim."

However, 25 Corpus Juris Secundum, 539, Damages, Section 52, states:

"Interest will not be denied, although the sum due is unliquidated where the amount is capable of ascertainment by mere computation, or is subject to reasonably certain calculations by reference to existing market values; but where the computation is based on market values, such values must be well established and knowledge thereof must be accessible to the debtor. * * *"

As to the special verdicts seven and five which are findings on the second and third causes of action that reflect the compensation for the holdover period and water and sewer bills in the same period, we determine and therefore hold that the court was correct as a matter of law to award interest on these jury verdicts. However, the fourth cause of action exemplifies a claim for unliquidated damages which cannot be calculated by existing market values. See *Markham* v. *David Stephenson Brewing Co.*, 97 N. Y. Supp., 604, in which the headnotes read:

"1. Where a tenant failed to make repairs, as he had covenanted to do, and the landlord made them, his measure of damages in an action against the tenant was the amount that he expended for the repairs, upon proof that it was the fair and reasonable cost of the work.

"2. Where a tenant failed to make repairs, as he had covenanted to do, and the landlord made them and sued to recover the amount expended, he was not entitled to recover interest; the damages not being ascertainable by computation."

With relation to the second headnote, the court said:

"* * * Having made the repairs, he could recover the amount expended for repairs, which it was the duty of the tenant to make, upon proving that it was the fair and reasonable cost of the work. It is manifest that different builders might differ as to the nature and extent of repairs that would be

necessary and suitable and properly chargeable to the tenant, and as to the cost of making the same. It is difficult to perceive how the defendant could have ascertained, even approximately, the amount of its liability to the plaintiff to enable it to tender the same. The question depended on proof and could only be authoritatively determined by a verdict or decision.''

The amount and nature of these damages could not be determined until the jury brought in a verdict. This, in part, is significantly pointed up by the answer to the special interrogatory submitted to the jury which attributes $3,659.46 out of the money actually expended by plaintiffs for repairs to ordinary wear and tear. We, therefore, disallow interest as set by the trial court on the fourth cause of action as a matter of law. The interest on this cause of action is to be awarded from the date of judgment. There is no need for discussing the interest award on the fifth cause of action because of our subsequent holding.

As to Assignment of Error No. 3, we have read the special verdicts and in light of the case of *Miller* v. *McAllister*, 169 Ohio St., 487, 160 N. E. (2d), 231, which, in part, holds:

''In a special verdict case, the instructions to the jury, special and general, should be largely the same as those which would be given in a case where a general verdict is to be returned, with such additions and adaptations as may be appropriate,''

and *McClure* v. *Neuman*, 113 Ohio App., 422, 178 N. E. (2d), 621, which says:

''A trial judge who is requested to submit a special verdict to a jury shall, when instructing the jury, furnish such definitions and instructions of specific law as are necessary to enable the jury to intelligently resolve each determinative issue, without disclosing the general law or judgment that may be rendered,''

we determine and, therefore, hold that each *determinative* issue was submitted to the jury through the special verdicts. It may be said that the jury's answers to interrogatories filed by defendant were consistent with their finding on the special verdicts. We, therefore, overrule this assignment of error.

As to Assignment of Error No. 4, we determine and, therefore, hold that the court was correct in overruling motions for

judgment notwithstanding the verdict on special verdict No. 4, which is the finding on the restoration of the A. D. T. Service, and special verdict No. 6, which is the finding on the cost of plaintiffs' maintaining public liability insurance. On special verdict No. 8 the jury awarded the sum of $6187.50 which was based on the same monthly rental called for in the lease in question for plaintiffs' loss of use of the premises for a three-month period, that is, loss of availability to rent, which in turn would give rise to a loss of profits in that the property could not be rented during the repair period. It is said in 16 Ohio Jurisprudence (2d), 210, Damages, Section 77:

"In the law of damages, only such damages are recoverable as may be said to be the natural and proximate result of the wrong committed, and as are not remote or speculative. Thus, it follows that there may be no recovery for loss of profits in an action for breach of contract where such profits may be considered to be remote or speculative, and not the natural and proximate result of the breach. In other words, the law does not permit the recovery of damages which can be ascertained only by speculative methods. Profits, the loss of which is not, as a matter of course, the direct and immediate result of the nonfulfillment of the contract, cannot be recovered."

The record is devoid of any evidnece whatsoever that there was a prospective tenant available during this period or that there was any attempt to find a tenant even if, in fact, the premises had been returned in good condition. Mr. Karl Kaserman, expert witness for plaintiffs, testified that the demand for leased property was rapidly declining in late 1958 and continued up to the time of trial. It may be parenthetically said that the premises in question were not leased until 1962. It must follow that the award made by the jury as reflected in special verdict No. 8 on the fifth cause of action must fall as a matter of law because there is no evidence whatsoever to sustain it. Therefore, the trial court was in error in not granting judgment notwithstanding the verdict as to special verdict No. 8.

We have examined the remaining assignments of error and find none prejudicial to the rights of defendant.

Judgment is entered accordingly.

A journal entry will be prepared in accordance with this opinion.

Exceptions.

SKEEL, C. J., CORRIGAN, J., concur.