CONTI CORPORATION, Appellee,

v.

OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES et al., Appellants.

[Cite as *Conti Corp. v. Ohio Dept. of Adm. Serv.* (1993), 90 Ohio App.3d 462.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–10.

Decided Sept. 21, 1993.

*Arter & Hadden* and *Peter D. Welin,* for appellee Conti Corporation.

*Lee Fisher,* Attorney General, *Mary Kirchner Crawford* and *Teri J. Ravetto,* Assistant Attorneys General, for appellant Ohio Department of Administrative Services.

*Lee Fisher,* Attorney General, and *Lauren M. Ross,* Assistant Attorney General, for appellant Youngstown State University.

PETREE, Judge.

This is an appeal from the Court of Claims of Ohio, which awarded plaintiff, contractor Conti Corporation, damages against defendants, Ohio Department of Administrative Services ("DAS") and Youngstown State University ("YSU") as follows: $117,951.59 against YSU and $229,782.50 against DAS and YSU jointly

and severally. DAS assigns five errors on appeal (numbered one through five hereafter). YSU joins as to assignments of error three, four and five, and also raises a sixth assignment of error, which is designated as assignment of error three in its brief.

Defendants contracted with plaintiff for renovation and reconstruction of Ward Beecher Science Hall on the YSU campus, and plaintiff began work on August 23, 1984. The project was halted from early 1986 to July 1986 after asbestos was discovered on the site. From that time until the end of the project in March 1987, other conditions were discovered requiring all contractors to perform extra work. After the project ended, plaintiff had several claims for payments, all of which were denied in the administrative review procedures established by Article 8 of the contract. About one year later, plaintiff submitted two additional claims for Article 8 review, then, on November 21, 1988, filed this action in the Court of Claims. Judgment was entered on November 30, 1992 and defendants separately filed timely notices of appeal.

I. "The trial court erred in assessing monetary liability against the Ohio Department of Administrative Services since the Department was acting as a disclosed agent and contract administrator for Youngstown State University."

II. "The trial court erred in assessing liability jointly and severally against two state agencies."

These first two assignments of error are related and will be considered jointly. Defendant DAS argues that it is not liable on the contract because DAS is the statutory agent of defendant YSU. DAS's attempts to define the relationship between itself and YSU are in vain due to the decision in *Ohio Dept. of Human Serv. v. Ohio Dept. of Transp.* (1992), 78 Ohio App.3d 658, 605 N.E.2d 1007. In that case, this court held that all state governmental agencies are members of the "state" as that term is defined and used in R.C. Chapter 2743. That is, state governmental agencies are not distinct entities within the meaning of R.C. Chapter 2743. "The only defendant in original actions in the court of claims is the state." R.C. 2743.02(E). "It is axiomatic that a party cannot sue itself." *Ohio Dept. of Human Serv., supra,* at 661, 605 N.E.2d at 1009. We agree with the recent holding of the Court of Claims that DAS is such a governmental agency: "DAS does not act on behalf of any particular agency, but on behalf of the State of Ohio." *Royal Elec. Constr. Corp. v. Ohio State Univ.* (Feb. 19, 1993), Court of Claims No. 90–05520, unreported.

DAS argues that R.C. 2743.19(A) forbids the Court of Claims from assigning joint and several liability against multiple state agencies. The statute contains no such prohibition; it merely provides that "the court of claims shall determine and specify in the judgment the department * * * against which a determination of

liability has been made." This the Court of Claims has done, specifying DAS and YSU. R.C. 2743.19(A) cannot be read as prohibiting judgments of joint and several liability. Because only "the state" can be a defendant, such an interpretation would be tantamount to charging the judiciary with the task of allocating costs among departments of the executive, which would violate the implied principle of separation of powers. In the absence of express constitutional provisions, the General Assembly cannot assign nonjudicial function to the judiciary. *Thompson v. Redington* (1915), 92 Ohio St. 101, 106, 110 N.E. 652, 654.

Therefore, it was not error for the Court of Claims to assess damages in the form of joint and several liability against DAS. The first and second assignments of error are overruled.

III. "The trial court erred in determining that the state's obligation under R.C. 153.14 to make payment on a construction contractor's approved estimates within 30 days means within 30 days after approval by the associate architect rather than by the State Architect."

The trial court found plaintiff to be entitled to $4,722 for interest on late payments due to the state's delay in paying plaintiff's invoices. Defendants allege that the trial court erred in awarding this amount, arguing that many of the invoice payments were not late, as they were not due until approved by the state architect. Defendants maintain that the majority of the invoices were paid in a timely manner if the time is calculated from the date of the state architect's approval. In the alternative, defendants argue even if the associate architect's approval was all that was needed, the evidence in the record does not support the trial court's decision.

■ The parties' contract provides that "payment of approved contractor's pay requests shall be made within thirty days from the date of approval by the Deputy Director of Public Works." R.C. 153.14, which applies to all public improvement contracts, reads in part:

"Payment on approved estimates filed with the owner or its representative shall be made within thirty days. Upon the failure * * * to make such payments within thirty days * * * there shall be allowed to the contractor, in addition to any other remedies allowed by law, interest on such moneys not paid within thirty days."

■ Initially, defendants argue that the contract provision requiring approval by the Deputy Director should be enforced. However, in *Ernst v. Ohio Dept. of Adm. Serv.* (1990), 69 Ohio App.3d 330, 337, 590 N.E.2d 812, 817, this court determined that R.C. 153.14 preempted a nearly identical contract provision. A state agency may not, by contract or otherwise, avoid one of the conditions

imposed by the General Assembly for the construction of public improvements. Therefore, R.C. 153.14 is controlling over the contract provision.

Defendants argue that the approval referred to in R.C. 153.14 is the approval of the state architect, not the associate architect for the project. We disagree. In *Ernst*, this court determined that the approval required by R.C. 153.14 is the approval of the "architect or engineer" referred to in R.C. 153.12. *Ernst*, 69 Ohio App.3d at 337–338, 590 N.E.2d at 817. "Architect" in the phrase "architect or engineer" must mean the associate architect because there is no such "state engineer" to parallel the state architect. Therefore, the thirty-day period begins to run once the payment request has been both submitted to the owner and approved by the associate architect. However, approval by the associate architect must be made within a reasonable time. *Id.* at 338, 590 N.E.2d at 817. Where approval is not given within a reasonable time, the thirty-day period will be deemed to expire at the end of the reasonable time.

In the present matter, the trial court's award is supported by plaintiff's Exhibit 30, which details the date each bill was submitted, the amount, the date it was paid and the number of days the payment was late. The exhibit also totals the late interest due to be $4,722.47, the amount awarded to plaintiff by the court.

Plaintiff's exhibit details the date the invoice was submitted, not the date it was approved by the associate architect. As the record contains the dates of the associate architect's approval, it is clear that the trial court did not utilize the correct standard in calculating the amount of interest due. For this reason, the court finds error in the trial court's decision and orders the trial court to calculate the amount of money due using the date of the associate architect's approval as the time at which the thirty-day period begins to run.

As stated, defendants' third assignment of error should be overruled, as the associate architect's approval is appropriate under R.C. 153.14. The court, however, has found error in the trial court's calculation of interest payments and, for that reason, defendants' third assignment of error is sustained in part.

IV. "The trial court erred in permitting a construction contractor to utilize an *Eichleay* formula to calculate home office overhead."

Defendants DAS and YSU argue on three grounds that it was error to use the *Eichleay* formula to calculate home office overhead. See *Appeal of Eichleay Corp.* (1960), 60–2 Board of Contract Appeals 2688, 1960 WL 538. First, defendants argue that plaintiff failed to prove damages and causation. However, the referee found that the delay in the project to remove asbestos lasted seven months, or one hundred forty eight-hour work days, and that the evidence further showed that plaintiff suffered damages and had made an effort to mitigate. " 'When the evidence adequately proves the existence of damages owing to a

delay in work on the project, the extent of those damages need not be quantified to a mathematical certainty[.]' " *Capital Elec. Co. v. United States* (C.A.Fed. 1984), 729 F.2d 743, 746 (quoting *amicus* brief).

" * * * [T]here is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount. * * *

" * * *

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief * * *." *Story Parchment Co. v. Paterson Parchment Paper Co.* (1931), 282 U.S. 555, 562–563, 51 S.Ct. 248, 250, 75 L.Ed. 544, 547.

Therefore, it was not error for the Court of Claims to adopt the referee's findings.

█ Second, defendants argue that it was error to apply the *Eichleay* formula absent expert testimony. The referee found that the simplicity of the formula, the widespread use of the formula, and the credible testimony of witnesses justified application of the *Eichleay* formula in the absence of expert testimony. Given the referee's findings, the trial court did not err in adopting the referee's recommendation.

Third, defendants argue that the testimony of plaintiff's accountant, Phil Selko, on the issue of application of the *Eichleay* formula should have been excluded because he served as an expert witness on to this issue yet had not been disclosed as an expert witness and had not submitted a written report as required by Court of Claims Loc.R. 7. Defendants provided no evidence or precedent to support the position that Selko's testimony exceeded the scope of Evid.R. 701. Selko did not function as an expert witness on the issue of the applicability of the *Eichleay* formula, and the testimony was properly admitted. Evidence is admitted at the discretion of the trial judge, and here there is no abuse of discretion.

Defendants' fourth assignment of error is overruled.

V. "The trial court erred in awarding prejudgment interest."

█ Defendants argue that it was error to award prejudgment interest. The Court of Claims adopted the judgment recommended by the referee but added prejudgment interest from March 22, 1987, the end of the project. The rule regarding prejudgment interest is set forth in R.C. 1343.03(A):

" * * * [W]hen money becomes due and payable upon any * * * instrument of writing [or] upon all verbal contracts entered into, * * * the creditor is entitled

to interest at the rate of ten per cent per annum * * * unless a written contract provides a different rate * * *."

However, as a general rule, the statute is limited to liquidated debts, that is, debts of a sum certain. *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 60, 22 O.O.3d 47, 48, 426 N.E.2d 526, 527; *Nursing Staff of Cincinnati, Inc. v. Sherman* (1984), 13 Ohio App.3d 328, 330, 13 OBR 406, 408, 469 N.E.2d 1031, 1034. This general rule has been expanded to include cases of unliquidated debt. In *Shaker Savings Assn. v. Greenwood Village, Inc.* (1982), 7 Ohio App.3d 141, 7 OBR 184, 454 N.E.2d 984, the Court of Appeals for Summit County overruled an appeal based in part on the contention that the debt was unascertainable until reduced to judgment. The court held that even if the sum is unliquidated, prejudgment interest may be awarded " ' "where the amount is capable of ascertainment by mere computation, or is subject to reasonably certain calculations by reference to existing market values" ' " that are well established and accessible to the debtor. *Id.* at 143, 7 OBR at 186, 454 N.E.2d at 986 (quoting *McKinney v. White Sewing Machine Corp.* [App.1964], 95 Ohio Law Abs. 368, 376, 32 O.O.2d 306, 311, 200 N.E.2d 596, 600–601). In *Shaker Savings Assn.,* the court found that any uncertainty as to the amount owed occurred after the litigation began, and that the debtor could have calculated the amount owed with reasonable certainty.

■ The judgment of the Court of Claims consists of six discrete sums, plus prejudgment interest thereon. The issue before us is which of the six discrete sums fall within the scope of *Shaker Savings Assn.* by being "capable of ascertainment by mere computation, or * * * subject to reasonably certain calculations by reference to existing market values." We find five that do so:

1. $17,500 from YSU for extra design and coordination activities performed by subcontractor Mr. Mitchell;

2. $129,459 from YSU and DAS, jointly and severally, for lost man-hours over the course of the project;

3. $11,780 from YSU for changes in Building 82;

4. $14,043 from YSU for direct job site maintenance expenses during the period of delay; and

5. $4,722 from YSU and DAS, jointly and severally, for interest on progress payments wrongfully withheld.

Item 5, interest on progress payments, is calculated pursuant to R.C. 153.14. That portion of the judgment consisting of these five sums is therefore a basis for

prejudgment interest.[1]

■ That portion of the judgment consisting of the sixth sum, $25,554 from YSU for unabsorbed home office overhead, is not a basis for prejudgment interest. As the referee's report states: "There is considerable difficulty in calculating home office overhead losses." Among the difficulties are (1) the common practice of not attributing overhead costs until the end of the fiscal year, (2) recordkeeping not narrowly related to particular projects or phases of projects, (3) inadequate reference in contracts to overhead costs, and (4) the difficulty in assessing the extent of mitigation. Therefore, that portion of the judgment pertaining to home office overhead is not a basis for prejudgment interest. It must be remarked that the simplicity of the *Eichleay* formula is not a factor here; the issue is the certainty of the calculation. The uncertainty, while it rises to the level of making prejudgment interest thereon inappropriate, is not so great as to be speculative, so as to make damages for unabsorbed overhead itself inappropriate.

The fifth assignment of error is sustained in part. On remand, the Court of Claims shall calculate the prejudgment interest based on the amount of the judgment exclusive of the amount attributable to home office overhead.

VI. "The trial court erred in permitting Conti Corporation to pursue at trial claims it failed to present in the Administrative Dispute Resolution Procedures of appellant Ohio Department of Administrative Services."

■ Defendant YSU argues that it was error for the Court of Claims to award $129,459 for lost man-hours (man-hours expended on accelerated performance) because plaintiff did not present a claim for this item under the procedures established by Article 8 of the contract. Defendant argues that R.C. 153.12(B), which requires that all administrative remedies be exhausted before an action may be brought in the Court of Claims, was violated.

YSU argues at length that the Court of Claims did not set forth evidence sufficient to rebut the presumption that the Article 8 procedure is consistent with due process requirements. Due process is not the issue, however. In fact, we may assume *arguendo* that the Article 8 procedures meet due process standards. The Court of Claims adopted the referee's finding that the Article 8 procedures, *as applied by DAS*, rose "to the level of a vain act and the rights to appeal to the next level are mere vapors. To require a contractor to submit to such is against public policy and plaintiff was certainly not required to submit to it for additional

---

1. The award of $4,722 for interest on progress payments wrongfully withheld shall be determined in accordance with this court's decision. The final amount determined by the Court of Claims for interest on late payments is subject to prejudgment interest.

claims." The referee's findings support the determination that plaintiff was relieved of whatever duty it may have had to submit the additional claims for Article 8 procedures. Even if the contrary is assumed, the referee found that plaintiff *did* submit its additional claim for Article 8 resolution, but that plaintiff was told that the Article 8 process had been exhausted.

Therefore, it was not error for the trial court to permit plaintiff to pursue the claims it allegedly failed to present in the Article 8 procedures. The sixth assignment of error is overruled.

For the foregoing reasons, the first, second, fourth and sixth. assignments of error are overruled. The third and fifth assignments are sustained in part, and the judgment of the Court of Claims of Ohio is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and DESHLER, JJ., concur.