[Cite as *J&H Reinforcing & Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 2012-Ohio-5308.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

J & H REINFORCING & STRUCTURAL ERECTORS, INC.

    Plaintiff/Counter Defendant

    v.

OHIO SCHOOL FACILITIES COMMISSION

    Defendant/Counter Plaintiff

Case No. 2010-07644

Judge Joseph T. Clark
Referee Thomas R. Yocum

JUDGMENT ENTRY

{¶ 1} Plaintiff/counter defendant, J&H Reinforcing & Structural Erectors, Inc. (J&H), brought this action against defendant/counter plaintiff, Ohio School Facilities Commission (OSFC), alleging breach of contract. OSFC asserted a counterclaim for breach of contract and breach of express and implied warranties. The case was tried to a referee pursuant to R.C. 2743.03(C)(3) and 153.12.

{¶ 2} On February 10, 2012, the referee issued a decision recommending judgment for J&H on its complaint in the amount of $959,232.00, and in favor of OSFC on its counterclaim in the amount of $180,332.67. The referee further found that the complaint and counterclaim arose from the same transaction or occurrence, and that the award to OSFC was to be offset against the award to J&H. Accordingly, judgment was recommended in favor of J&H in the total amount of $778,899.33, plus prejudgment interest and costs.

{¶ 3} Civ.R. 53(D)(3)(b)(i) states, in part: "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R.

53(D)(4)(e)(i)." On February 24, 2012, both OSFC and J&H timely filed objections.[1] On March 5, 2012, the parties filed responses.

**FACTS RELEVANT TO THE COMPLAINT**

{¶ 4} In 2007, OSFC and the Wheelersburg Local Schools Board of Education (Wheelersburg) solicited bids for the construction of a school that was to house grades K-12. OSFC had previously contracted with Tanner Stone Holsinger Donges & Company (Tanner Stone) to act as project architect and Bovis Lend Lease Company (Bovis) to act as its construction manager.

{¶ 5} J&H secured two separate contracts for the project. The first involved the pre-construction site work (Joint Exhibit O - Joint Exhibits are referred to herein as "JX"), and the second (the "Contract" which is subject of this litigation) involved the combination of general trades work, masonry, and interior case work (JX F). Notice to J&H to proceed was issued by Bovis on October 2, 2006. (Plaintiff's Exhibit 91 - Plaintiff's Exhibits are referred to herein as "PX.") However, shortly after work was to begin, J&H encountered soil conditions which were unexpected and which proved to be too unstable to support the structure. J&H subsequently performed lime stabilization work pursuant to a contract change order. (JX P.) According to J&H, the delay caused by the poor soil conditions pushed the start of building construction out to December 26, 2006.

{¶ 6} The masonry and general trades work progressed at a steady pace from July 2008 through the fall of 2008. However, J&H learned that several Air Handling Units (AHUs) supplied by another contractor which were originally scheduled to be delivered in May of 2007, were not going to arrive until September 2007. The late delivery of the AHUs altered the sequence of the masonry and roofing work.

---

[1]For good cause shown, OSFC's February 24, 2012 motion for leave to exceed the court's page limitation for its brief is GRANTED, instanter, as is J&H's March 5, 2012 motion to supplement its objections.

**{¶ 7}** On February 19, 2008, the parties executed Change Order 29 (CO 29) whereby J&H agreed to extend the project completion date from March 17, 2008 to July 15, 2008 in return for a one time payment in the amount of $113,479.04. (JX G-303.) Bovis project manager, Ron Palonis, drafted a new project schedule incorporating the agreed July 15, 2008 completion date. On February 14, 2008, after reviewing the new schedule, J&H project manager, Mark Rollins, began sending letters to Palonis informing Bovis that the schedule did not accurately reflect the progress that was being made in the field and asking Bovis either for additional time to complete specific tasks or for a corresponding extension of the project completion date. Rollins estimated that he sent 12-14 such letters over the next four months. In his last such letter dated April 7, 2008, Rollins requested an extension of the completion date to September 28, 2008. None of the requested extensions of time were granted.

**{¶ 8}** Over the course of the next several months, J&H repeatedly complained to Bovis that its work was being impacted by the presence of other contractors in its work space.

**{¶ 9}** The referee found that Bovis had deliberately manipulated its own scheduling software so that a schedule could be produced with a July 15, 2008 completion date, even though Bovis knew that such a schedule was both unrealistic and unmanageable. The referee also found that the unrealistic schedule caused the stacking of trades experienced by J&H.

**{¶ 10}** In June of 2009, with the start of the school year looming and progress on the project slowing, Bovis brought in Bruce Wilson as its new project superintendent. Under Wilson's leadership and what Wilson described as a "heroic effort" by J&H, the project was substantially completed in time for the school year.

**THE PARTIES' OBJECTIONS**

{¶ 11} In its first objection, J&H argues that the referee erred in concluding that J&H was not entitled to an equitable adjustment to the contract to account for the delay caused by the poor site conditions. The court disagrees.

{¶ 12} The referee found that J&H was not entitled to an equitable adjustment for the site delay inasmuch as J&H failed to timely request an extension of time, in writing, as required by Article 6 of the contract, and failed to provide timely notice of its claim for an equitable adjustment pursuant to Article 8.1.

{¶ 13} Article 6 of the General Conditions provides:

{¶ 14} "6.4.1   Any request by the Contractor for an extension of time shall be made in writing to the Construction Manager no more than ten (10) days after the initial occurrence of ay condition which, in the Contractor's opinion, entitles the Contractor to an extension of time. *Failure to timely provide such notice to the Construction Manager shall constitute a waiver by the Contractor of any claim for extension, damages or mitigation of Liquidated Damages, to the fullest extent permitted by law.*" (Emphasis added.)

{¶ 15} Article 8.1 provides:

{¶ 16} "Any request for equitable adjustment of Contract shall be made in writing to the Architect, through the Construction Manager, and filed prior to Contract Completion, provided the Contractor notified the Architect, through the Construction Manager, no more than ten (10) days after the initial occurrence of the facts which are the basis of the claim. *To the fullest extent permitted by law, failure of the Contractor to timely provide such notice and a contemporaneous statement of damages shall constitute a waiver by the Contractor of any claim for additional compensation* or for mitigation of Liquidated Damages." (Emphasis added.)

{¶ 17} Although OSFC argues in objection II(B) that a written 10-day notice is required pursuant to Article 8.1, the plain language of Article 8.1.1 contains no writing

requirement either for the 10-day notice or the contemporaneous statement of damages.[2] Similarly, the case law does not support J&H's claim that compliance with the 10-day notice was unnecessary. *See Stanley Miller Constr. Co. v. Ohio School Facilities Comm.,* 10th Dist. Nos. 10AP-298, 10AP-299, 10AP-432 & 10AP-433, 2010-Ohio-6397, ¶ 17, citing *Dugan & Meyers Constr. Co. v. Ohio Dept. of Admin. Servs.,* 113 Ohio St.3d 226, 2007-Ohio-1687. *See also Cleveland Constr., Inc. v. Kent State Univ.,* 10th Dist. No. 09AP-822, 2010-Ohio-2906. (The Tenth District reversed its prior decision in *Conti Corp. v. Ohio Dept. of Admin. Servs.,* 90 Ohio App.3d 462 (10th Dist.1993), which had recognized a "vain act" exception to the contractual claims process.) Accordingly, even though OSFC had actual notice of the facts which gave rise to the claim and was not otherwise prejudiced by the lack of notice, formal notice is still required. *See Stanley Miller, supra.*

{¶ 18} Moreover, even if the court were to find that Bovis had been orally notified by J&H of the occurrence forming the basis of the AHU delay claim within ten days thereof, there is no evidence that J&H provided a "contemporaneous statement of damages," as required by the second sentence of Article 8.1.

{¶ 19} J&H argues, in the alternative, that Article 6.4 and 8.1 of the contract are unenforceable pursuant to R.C. 4113.62(C)(1), which provides in relevant part: "Any provision of a construction contract * * * that waives or precludes liability for delay during the course of a construction contract *when the cause of the delay is a proximate result of the owner's act or failure to act,* or that waives any other remedy for a construction contract *when the cause of the delay is a proximate result of the owner's act or failure to act*, is void and unenforceable as against public policy." (Emphasis added.)

---

[2]The facts of this case are distinguishable from those in our prior decision in *Tritonservices, Inc. v. Univ. of Cincinnati,* Ct. of Cl. No. 2009-02324, 2011-Ohio-7010, in that Article 8.1 in that case expressly required a written 10-day notice. This distinction was recognized by this court in *Stanley Miller Constr. Co. v. Ohio School Facilities Comm.,* Ct. of Cl. No. 2006-04351 (May 8, 2012). (Decision on remand from the Tenth District).

{¶ 20} Although there is little case law explaining the circumstances under which this statute would require the court to invalidate a provision in a construction contract, the court believes that some degree of fault on the part of the owner is required. Indeed, the use of the term "proximate result" implies legal fault or culpability.[3] Here, the evidence establishes that the site delay was attributable to unanticipated soil conditions. There is no convincing evidence in this case to support the conclusion that OSFC either knew or should have known about the poor soil conditions prior to the discovery of such conditions at the commencement of the project. Under such circumstance, R.C. 4113.62(C)(1) is not applicable, which means that Articles 6 or 8 of the parties' agreement are valid and enforceable as they pertain to the soil conditions claim. Accordingly, J&H's first objection shall be overruled.

{¶ 21} In J&H's third objection, J&H contends that the payment made pursuant to CO 29 did not include extended home office overhead (HOO) and that the referee erred by not awarding any HOO for the relevant time period. While the court agrees that there is a distinction between field overhead and HOO, the language employed in CO 29 does not make such a distinction. Accordingly, the referee did not err in determining the scope of the payment under CO 29.

{¶ 22} In objection II(C), OSFC contends that the payment made to J&H pursuant to CO 29 was intended by the parties as a full satisfaction of all future J&H claims on this project, including those arising from the AHU delay (first impact period). However, upon a review of the referee's decision and the relevant evidence, the court finds both that CO 29 is clear and unambiguous and that the plain language of CO 29 supports the referee's findings and conclusions on this issue.

{¶ 23} In objection II(A), OSFC argues that the referee erred in determining that J&H complied with the contractual 10-day notice requirements with regard to the first

---

[3]*See Cleveland Constr. Inc. v. Ohio Pub. Emps. Retirement Sys.,* 10th Dist. No. 07AP-574, 2008-Ohio-1630, ¶ 10; Restatement of the Law 2d, Torts, Section 281.

impact period.   The referee concluded that a series of letters sent by J&H to Bovis, requesting extensions of time due to the AHU delays satisfied the contractual notice requirements. The referee stated:

{¶ 24} "Concerning the claim for extra costs associated with the untimely delivery of the AHUs, the evidence establishes that J&H sent correspondence to Bovis on August 28, 2007 and November 5, 2007, which, in the opinion of the court, satisfy the requirements of Article 6.   The letter from Rollins to Palonis on August 28, 2007, contains details regarding the specific areas of the masonry and roofing work that are being delayed and requests Bovis 'publish a Request for Proposal to extend our contract an additional 44 days.'   Rollins further states:  'Obviously the number of days we are being impacted increases daily not only from the perspective of actual calendar days but also the longer-range effect (sic) on subsequent activities.'

{¶ 25} "The November 5, 2007 letter from Rollins references the prior notice and asks for a 'Request for Proposal,' this time for 73 days.  The letter ends as follows: 'We also reserve the opportunity to revisit the impact the delayed arrival and installation of the AHUs will have on our contract as construction activities are executed during the upcoming weeks as mentioned above.'

{¶ 26} "OSFC claims that J&H's notice was untimely in that it should have been sent in June or July when the AHUs were supposed to be delivered.  This argument seems specious in light of the fact that the delays of which J&H complains did not occur on the first day the AHUs were late.  Rather, the extra costs accrued over time as J&H gained knowledge that the scheduled work activities on a particular date would be delayed and that out of sequence work would subsequently need to be performed. In fact, the evidence shows that the impact of the AHU delays first occurred in early August 2007, but that J&H did not form a belief that such delays would entitle it to a specific time extension until later that month, shortly before Rollins authored his August 28, 2007 letter."

{¶ 27} The court agrees with the referee's analysis on this issue and for the reasons set forth in the magistrate's decision, OSFC's objection II(A) shall be overruled.

{¶ 28} In its second objection, J&H criticizes the referee's reliance on the testimony of OSFC's expert, Kelly Roeschke, inasmuch as Roeschke opined that J&H's efficiency was not impacted in either the first or second impact period. The court disagrees.

{¶ 29} The trial court as the trier of the facts is the sole judge of the credibility of witnesses and, as such, may believe or disbelieve all or part of any witness's testimony. *See R. Ruben v. L. Ruben*, 10th Dist. No. 82AP-914 (July 26, 1983); *Phillips v. Sharp*, 44 Ohio App. 311 (6th Dist.1932). In this case, the referee agreed with plaintiff's expert, Timothy Calvey, who testified that J&H's efficiency was impacted both by the AHU delay and the resulting out of sequence work in the first impact period, and by the unworkable schedule in the second impact period. The referee, however, did not believe that the evidence supported Calvey's opinion as to either the duration and extent of the impact. Rather, the referee found that, in consideration of the expert testimony of Roeshke, and the evidence adduced at trial in support of Roeshke's opinions, neither the extent nor the duration of the impact was as great as Calvey had opined.

{¶ 30} Upon review of the testimony and other evidence admitted in these proceedings, the court finds that the referee's approach to the determination of both the duration and extent of the two impact periods reflects careful deliberation based upon all of the relevant evidence. In fact, an independent review of the evidence by the court reveals that the referee's findings are supported by the greater weight of the evidence. Accordingly, J&H's second objection shall be overruled.

{¶ 31} In objection II(D), OSFC disagrees with the referee's finding that it was at fault for the occurrence that led to the second impact period, that OSFC waived strict compliance with Article 8.1, and that R.C. 4113.62(C)(1) barred OSFC from asserting waiver by J&H. The referee's findings of fact regarding the "lack of good faith" on the

part of Bovis in its dealings with J&H are supported by the greater weight of the evidence in this case. The evidence and referee's findings support the conclusion that OSFC waived strict compliance with Article 8.1 as well as the conclusion that R.C. 4113.62(C)(1) bars enforcement such provisions. Accordingly, OSFC's objection shall be overruled.

{¶ 32} In its fourth objection, J&H challenges the referee's conclusion that the evidence does not support recovery of the Harris Flooring pass-through claim. However, the court's review of the testimonial and documentary evidence in support of the claim, leads the court to the same conclusion. Although the court agrees that Harris Flooring may have been required to accelerate its work due to the stacking of trades in the second impact period, the claim is simply not sufficiently documented to permit recovery. Accordingly, the objection is without merit.

{¶ 33} In objection II(E), OSFC claims that J&H failed to provide timely notice of the change in the labor rate and that the referee erred by awarding damages at the greater rate. However, as noted above, the referee correctly determined that J&H had complied with Article 8 in connection with the AHU delay and that compliance was either waived by OSFC or was not required in the second impact period. *See* R.C. 4113.62(C). Additionally, the referee specifically found that CO 29 did not contemplate wage rate increases. The court agrees with the referee's decision. Accordingly, objection II(E) shall be overruled.

{¶ 34} In objection II(F), OSFC contends that the referee's award of damages for idle equipment was purely speculative. However, based upon the court's review of the testimony and other evidence presented by J&H, there was sufficient evidence presented at trial to permit the inference that J&H equipment was on site during the AHU delay and that some of that equipment sat idle while masonry work was performed out of sequence. The court further finds that the referee's calculation of the amount of the loss was reasonable. Accordingly, the objection shall be overruled.

{¶ 35} In objection II(G), OSFC contends that the claim for compensation attributable to  extended general conditions must fail inasmuch as J&H's bid estimate suggests that J&H planned to be on site for 21 months.  However, the court's review of the evidence shows that J&H was on site longer than it expected to be due to delays and inefficiencies beyond its control, regardless of the statement made in the pre-construction bid estimate.  Accordingly, this objection shall be overruled.

{¶ 36} In objection II(H), OSFC argues that the testimony regarding damages is unreliable inasmuch as the opinions of J&H's expert cannot be reconciled with J&H's job cost reports. The court disagrees.  The referee heard testimony from J&H witnesses to the effect that the job cost reports were not intended to capture every cost associated with the project and that relying exclusively upon the job cost reports to determine total costs would yield an inaccurate result.

{¶ 37} OSFC also argues in its objection that the referee did not hear sufficient testimony to allow an accurate apportionment of damages among the waived claims and the claims that were preserved.  Again, the court disagrees.  J&H presented its claims and evidence in such a way that it is relatively easy for the referee, and for the court in reviewing the evidence, to separate the claims both chronologically and by subject matter.  The referee's decision reveals that the referee carefully found facts and reached conclusions on a claim by claim basis.

{¶ 38} OSFC's objection II(H) shall be overruled.


**FACTS RELEVANT TO THE COUNTERCLAIM**

{¶ 39} Before the building was occupied in August 2008, school district employees noticed water leaking into the building whenever it rained.  A company by the name of Western Water Proofing was called upon to perform destructive testing which consisted of removing the exterior brick veneer in many different areas and inspecting the flashing system. According to the evidence, flashing acts as a waterproof

skin that adheres to the masonry walls behind the brick veneer and under the insulation. J&H had installed the flashing as part of its contract.

{¶ 40} The results of the destructive tests revealed poor workmanship and oversights by J&H in all areas tested. Edefice Restoration was subsequently awarded the contract for the re-mediation project at a price tag of more that $290,000 including the cost of new ceiling tiles.

## J&H OBJECTIONS

{¶ 41} In its fifth and sixth objections, J&H challenges the referee's findings of fact and conclusion of law regarding OSFC's through wall flashing claim. Specifically, J&H contends that OSFC cannot prevail upon its claim unless it proves the source of the leaks, that OSFC wrongfully denied J&H the opportunity to remedy defects, and that OSFC failed to mitigate damages. However, these arguments were previously considered and rejected by the referee. Upon review of the referee's decision and the evidence produced at trial, the court determines that the referee's factual findings are supported by the greater weight of the evidence and that the referee's conclusions are consistent with the law. Accordingly, the fifth and sixth objections shall be overruled.

## COSTS

{¶ 42} On March 14, 2012, J&H filed a motion for costs. OSFC argues that the motion is premature.

{¶ 43} Civ.R. 54(D) states that "costs shall be allowed to the prevailing party unless the court otherwise directs." Further, Civ.R. 58(C) states that "[e]ntry of the judgment shall not be delayed for the taxing of costs."

{¶ 44} Inasmuch as OSFC prevailed on the counterclaim and because an appeal of the court's decision is a virtual certainty, the motion for costs shall be HELD in abeyance until such time as costs can be fairly assessed.

**CONCLUSION**

{¶ 45} Upon review of the record, the referee's decision and the objections, the court finds that the referee has properly determined the factual issues and appropriately applied the law. Therefore, the objections are OVERRULED and the court adopts the referee's decision and recommendation as its own, including findings of fact and conclusions of law contained therein.

{¶ 46} Judgment is rendered for plaintiff/counter defendant in the amount of $778,924.33, which includes the filing fee paid by plaintiff/counter defendant plus prejudgment interest to be determined at a subsequent proceeding.

_____
JOSEPH T. CLARK
Judge

cc:

David A. Beals                           Donald W. Gregory
James E. Rook                            Michael J. Madigan
Jon C. Walden                            Capitol Square Office Building
Mark R. Wilson                           65 East State Street, Suite 1800
Assistant Attorneys General              Columbus, Ohio 43215-4294
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

006
Filed June 6, 2012
To S.C. Reporter November 15, 2012