AMERICAN FINANCIAL LEASING and SERVICES CO. ET AL., APPELLEES, *v.* MILLER ET AL., APPELLANTS.

(No. 74AP-51—Decided July 2, 1974.)

*Mr. Robert F. Gardner,* for appellees.
*Messrs. Wilcox, Schlosser & Schneider,* for appellants.

HOLMES, J. This matter involves the appeal of that portion of a judgment of the Court of Common Pleas of Franklin County which awarded the plaintiff American

Financial Leasing and Services Company the amount of $2,119.79, which the plaintiff argued and the trial court agreed was "stipulated damages" included in a lease contract by and between the parties hereto.

The defendants appeal, assigning one error to the effect that such amount was erroneously awarded, in that such amount constituted a "penalty" rather than a lawful "stipulated damage."

The facts of this case are basically that the defendants wished to engage in the business of gasoline sales in combination with a car wash operation in Columbus, Ohio. In order to finance the car wash equipment, the defendants, in 1967, entered into a financing arrangement with the plaintiff company, such arrangement being in the form of an equipment lease.

The lease, as drawn by the plaintiff company, provided for the leasing of the equipment to the defendants for an initial period of five years, with the right to renew for three one-year periods, at the end of which time the plaintiff company would "abandon the equipment to the defendants."

The defendants made all of the payments due under the lease from the date of entering into such in 1967 until May of 1971, at which time defendants lost their real estate lease and were evicted. Plaintiff repossessed the equipment and thereafter sold such to another operator, and then brought an action in the Common Pleas Court of Franklin County to recover pursuant to the terms of the lease.

The items of damage, and the method of calculation thereof were set forth in plaintiffs' Exhibit C. Such items included eleven unpaid rental payments as of October 16, 1971, interest charges, certain miscellaneous charges, and a charge of $2,119.79 which was listed as "10% of cost per lease." It is this item which the defendants now contend is not proper.

Such amount is sought by the plaintiff lessor on the specific basis of paragraph 21(c) of the lease herein. For the purpose of availing the reader the opportunity of seeing paragraph 21(c) in relationship to its surrounding lease provisions, we set it forth in its entirety:

"21. Default. If lessee fails to pay any rent or other amount herein provided within ten (10) days after the same is due and payable, or if lessee fails to perform any other provision hereof within ten (10) days after lessor shall have demanded in writing performance thereof, or if any proceeding in bankruptcy, receivership or insolvency shall be commenced by or against lessee or its property, or if lessee makes any assignment for the benefit of its creditors, lessor shall have the right, but shall not be obligated to exercise any one or more of the following remedies: (a) to sue for and recover all rents and other amounts then due or thereafter accruing under this lease; (b) to take possession of any or all of the equipment, wherever it may be located, without demand or notice, without any court order or other process of law, and without incurring any liability to lessee for any damages occasioned by such taking of possession; (c) to sell any or all of the equipment at public or private sale for cash or on credit and to recover from lessee all costs of taking possession, storing, repairing and selling the equipment, an amount equal to ten percent (10%) of the actual cost to lessor of the equipment sold, and the unpaid balance of the total rent for the initial term of this lease attributable to the equipment sold, less the net proceeds of such sale; (d) to terminate this lease as to any or all items of equipment; (e) in the event lessor elects to terminate this lease as to any or all items of equipment, to recover from lessee as to each item subject to said termination the worth at the time of such termination, of the excess, if any, of the amount of rent reserved herein for said item for the balance of the term hereof over the then reasonable rental value of said items for the same period of time; (f) to pursue any other remedy now or hereafter existing at law or in equity.

"Notwithstanding any such action that lessor may take, including taking possession of any or all of the equipment, lessee shall remain liable for the full performance of all its obligations hereunder, provided, however, that if lessor in writing terminates this lease, as to any item of equipment, lessee shall not be liable for rent in respect of

such item accruing after the date of such termination.

"In addition to the foregoing, lessee shall pay lessor all costs and expenses, including reasonable attorneys' fees, incurred by lessor in exercising any of its rights or remedies hereunder.

"In the event that one or more of the lessees in the within lease is a lessee under any other lease from the lessor herein, default in the terms of this lease shall be and constitute a default under any other lease then in force and similarly a default in any one or more of such other leases shall constitute a default under this lease."

It is quite generally accepted that a clause in a contract providing for liquidated damages in the event of a default is valid and enforceable; *Lange* v. *Werk* (1853), 2 Ohio St. 520; *Norpac Realty Co.* v. *Schackne* (1923), 107 Ohio St. 425; *Jones* v. *Stevens* (1925), 112 Ohio St. 43. See 16 Ohio Jurisprudence 2d (Revised) 153, Damages, Section 132.

The text of the Ohio Jurisprudence article calls one's attention to the difference between a liquidated damage provision and a penalty provision that might be found in a contract. More particularly, the article points out the differences of the courts' view as between the two.

16 Ohio Jurisprudence 2d (Revised) 154, Damages, Section 133, reads as follows:

"While provisions for liquidated damages in a contract are valid and enforceable, courts avoid the enforcement of a provision for liquidated damages when it is actually in the nature of a penalty. As distinguished from liquidated damages, a 'penalty' is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. Stipulations for liquidated damages are often treated as penalties because of the inequities that would result from the strict enforcement of the stipulations, and there is a marked tendency on the part of the courts to construe stipulations for liquidated damages as penalties. * * *"

Every contract, and the specific wording thereof must

be viewed in its entirety in determining the intent of the parties and in arriving at conclusions with regard to the validity of a provision seeking a certain sum of money in the event of a breach of the contract.

The aforestated textual article sets forth the proposition, which we accept as being valid, that most Ohio cases hold that there must be three elements appearing in order that the provision may be construed as one for liquidated damages, rather than a penalty. It is stated therein, at page 155, that "* * * it must, according to most cases, appear that the sum stipulated bears a reasonable proportion to the loss actually sustained; that the actual damages occasioned by the breach are uncertain or difficult to ascertain; and most important of all, that a construction of the contract as a whole evinces a conscious intention of the parties deliberately to consider and adjust the damages that might flow from the breach. * * *"

An excellent statement of the general principles involved herein was set forth in the case of *Miller* v. *Blockberger* (1924), 111 Ohio St. 798, wherein we find the first and second paragraphs of the syllabus to read as follows:

"1. In determining whether the sum provided in a contract to be paid in the event of its breach is liquidated damages, or a penalty, a court will construe the contract by its four corners in the light of the situation of the parties at the time of the execution of the contract, and from that position will determine whether the damages which would be sustained by reason of the breach could, at the time of the execution of the contract, by the process of computation and adjustment, have been easily and approximately ascertained; and, in determining whether they were so ascertained; and, in determining whether they were so ascertained, will compare the amount stipulated with the amount of damages which would probably result from the breach, and if there is such discrepancy between the sum stipulated and the damages which would probably and naturally result from the breach as to indicate that the sum stipulated could not have been arrived at by a process of computation and adjustment, or if arrived at by process of computation and adjustment such process did

not have for its purpose compensation, but was arrived at for some purpose other than compensation, the sum stipulated will be held to be 'penalty' rather than 'liquidated damages.'

"2. Where the parties to the contract, having in mind the damage which will be occasioned by its breach, compute or estimate that damage and contract with reference thereto, and the sum stipulated bears a reasonable proportion to the damages which would result from the breach, such stipulated sum will be considered as 'liquidated damages.' "

It is our belief that the main element to be considered in arriving at the determination of the validity of such a provision is whether it expresses the intention of the parties that any such stipulated amount represents the reasonable damage for the breach of the general provisions of the contract, which damage, because of the nature of the transaction, would be difficult to ascertain.

If the provision is not on its face unconscionable, the element of fraud is not present, and the amount can reasonably be related to the loss that may have been experienced by a party due to the breach, the reviewing court should uphold the provisions of the contract.

However, where, upon a review of the terms of the specific agreement, all of the elements in the rule do not fall into place, a contrary conclusion must be reached. Such is the case before this court.

In the first instance, the actual damages that would be sustained by the lessor, in the event of a breach by the lessees would not be difficult to ascertain or prove. There would be little or no uncertainty in determining actual damages. Such damages would be the unpaid portion of the lease and, if the property had been repossessed, the costs of repossession and sale, and any deficiency remaining after such sale.

Secondly, we must look to the reasonableness of the 10 percent to be exacted from the lessees pursuant to the "Default" paragraph of the contract.

It should be noted that in the "Default"' paragraph, upon the occurrence of one of the events constituting a de-

fault, the lessor had a wide range of options available to him: (a) he could sue for all amounts "then due or thereafter accruing under the lease"; (b) he could take possession of the leased property without notice, or court order; (c) he could sell any or all of the equipment at public or private sale, recover from the lessee all costs of taking possession of, storing, repairing and selling such equipment, recover from the lessee "an amount equal to ten percent (10%) of the actual cost to lessor of the equipment sold" (the clause herein contested), and recover from the lessee the unpaid balance of the rent for the initial term (5 years) of the lease, less the net proceeds of any sale; (d) he could terminate the lease; (e) he could, upon a termination, recover from the lessee "the worth at the time of such termination of the excess, if any, of the amount of rent reserved herein for said item for the balance of the term hereof over the then reasonable rental value of said item for the same period of time"; (f) he could "pursue any other remedy now or hereafter existing at law or in equity."

It being inconceivable that the print used in the production of the instrument could have been any smaller, it appears that the only way in which additional default provisions favorable to the drafter could be included would be by way of adding further pages to the contract.

In any event, going specifically to the reasonableness of the stipulation exacting ten percent of the contract price in the event of default, we hold that such amount, in light of the other provisions covering the recoupment of the lessor's actual damage in the event of a breach, neither bears a reasonable relationship to such damage, nor is in a reasonable proportion thereto.

Such amount is patently in excess of the actual damage which could be suffered by the lessor, and therefore must be considered as a "penalty" rather than a stipulated "liquidated damage."

Further, a reading of the contract in its totality, and most particularly the paragraph entitled "Default," shows that there are ample provisions which reasonably consider and adjust any damages which might flow from a breach.

76

On the other hand, we are not convinced that it was the intent and understanding of the parties hereto that the enforcement of the clause questioned would reasonably adjust the actual damages that might flow from any breach.

As previously stated, the courts are generally reluctant to step in and reform contracts of individuals, in that our business world demands, and should be afforded, a free right of contract. Yet the underlying philosophy pertains that our courts abhor penalties, and such legal philosophy must be applied to the instant contract.

Therefore, the single assignment of error is sustained, and the judgment of the Court of Common Pleas of Franklin County is hereby reversed and a final judgment is entered accordingly.

*Judgment reversed.*

STRAUSBAUGH and REILLY, JJ., concur.