**DOMESTIC LINEN SUPPLY & LAUNDRY COMPANY,**
Appellant and Cross–Appellee,

v.

**KENWOOD DEALER GROUP, INC., Appellee and Cross–Appellant.**

[Cite as *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group, Inc.* (1996), 109 Ohio App.3d 312.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA95–05–049 and CA95–05–056.

Decided Feb. 5, 1996.

314

*Condit & Dressing Co., L.P.A., John W. Dressing* and *Patrick X. Dressing,* for appellant and cross-appellee.

*Cors & Bassett, Robert J. Hollingsworth, Stephen S. Holmes* and *Curtis L. Cornett,* for appellee and cross-appellant.

———————

KOEHLER, Judge.

Plaintiff-appellant and cross-appellee, Domestic Linen Supply and Laundry Company, appeals an order of the Warren County Court of Common Pleas granting judgment in favor of appellant and against defendant-appellee and cross-appellant, Kenwood Dealer Group, Inc., in a breach of contract action.

On October 19, 1990, the parties entered into a written contractual agreement in which appellant agreed to supply appellee with uniforms and towels on a weekly basis for use by appellee at its six automobile dealership locations for sixty months. The contract also provided for liquidated damages upon the breach of the contract by appellee. The amount of the liquidated damages was agreed to be forty percent of the gross anticipated receipts for the unexpired term of the contract. This forty-percent figure consisted of thirty percent fixed costs and ten percent net profit. The gross anticipated receipts were agreed to be calculated by multiplying the number of weeks remaining under the contract from the date of the breach to the expiration date of the contract by the actual weekly billing amount at the time of the breach or the minimum delivery charge agreed to under the contract, whichever was greater.

By letter dated October 23, 1990, appellee notified appellant that it was canceling the contract. On January 8, 1991, appellant filed a complaint in the trial court seeking $91,354.60 in damages for breach of contract under the contract's liquidated damages clause. Both parties subsequently filed motions for summary judgment. By decision and entry filed December 7, 1992, the trial court granted partial summary judgment to appellant on the issue of appellee's liability for breach of contract and to appellee on the ground that the liquidated damages clause was penal in nature and thus unenforceable. Both parties appealed the trial court's decision to this court, which dismissed both appeals for lack of a final appealable order.

Appellant subsequently sought and was granted a motion for leave to amend its complaint to add a claim for actual damages. On April 11, 1995, following a bench trial on February 16 and 17, 1995, the trial court granted judgment in favor of appellant in the amount of $91,354.60, with interest running from "October 23, 1990 to December 7, 1992, and then from the date of judgment forward." In a decision filed the same day, the trial court held that upon

reconsideration, the contract's liquidated damages clause was valid and enforceable. The court further held that although appellant had proven actual damages of $152,000 in lost gross profits, the liquidated damages clause acted as a ceiling and thus appellant was entitled only to $91,354.60.

On April 18, 1995, appellee filed a request for separate findings of fact and conclusions of law, which was overruled by the trial court on May 8, 1995. Appellant and appellee both filed motions for a new trial on April 25, 1995 and May 8, 1995 respectively. The trial court denied both motions on May 8, 1995.

Appellant then timely filed this appeal raising five assignments of error. Appellee cross-appealed raising five assignments of error. All of the assignments of error and cross-assignments of error will be addressed out of order for purposes of brevity and clarity. Appellant's second assignment of error and appellee's fourth cross-assignment of error both deal with the same issue and therefore will be discussed together. Appellant's fifth assignment of error and appellee's fifth cross-assignment of error will be similarly discussed together. Each of the other assigned errors will be discussed separately.

In its first cross-assignment of error, appellee argues that the trial court erred in holding that the parties' contract was enforceable. Appellee contends that the contract is illusory and thus unenforceable because it provides appellee with an unlimited right to determine the nature and extent of its performance. Appellee bases its contention on the last sentence of paragraph three of an addendum to the contract, which states, "[C]ustomer [appellee] does not guarantee a minimum amount of revenue to Company [appellant]."

"[A] contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory." *Century 21 Am. Landmark, Inc. v. McIntyre* (1980), 68 Ohio App.2d 126, 129–130, 22 O.O.3d 141, 143–144, 427 N.E.2d 534, 536–537. The parties' contract provides in relevant part that "[t]he Company agrees to furnish on a weekly rental basis and the Customer agrees to use the following items at the prices as indicated in the schedule below." Paragraph three of the addendum to the contract reads in its entirety as follows:

"Minimum Delivery Charges. The amount agreed by the parties as the 'minimum delivery charge' is not a guarantee of weekly revenue to Company, but rather an amount to be paid by Customer to Company for the quantities of garments set forth in The Agreement. In the event Customer has an increase or decrease of employees requiring uniforms the minimum delivery charge will be adjusted accordingly. Customer does not guarantee a minimum amount of revenue to Company."

Unlike appellee, we do not view the foregoing language as providing appellee with an unlimited right to determine the nature or the extent of its performance. Paragraph three of the addendum merely calls for an adjustment, when necessary, in the minimum delivery charge to accommodate appellee's actual business needs during the life of the contract. Paragraph three does not release appellee from its obligation to lease all of its uniform and towel needs from appellant. We therefore find that the contract is not illusory. Appellee's first cross-assignment of error is overruled.

█ In its second cross-assignment of error, appellee argues that the trial court erred in finding that appellant had proven damages of $152,000 in lost gross profits. Appellee argues that the evidence used by appellant, which consisted of "the unsubstantiated testimony of an interested witness and corporate-wide average profit percentages" as well as unaudited financial statements, was merely conclusory. As a result, appellee contends appellant failed to demonstrate its lost profits with reasonable certainty.

It is well-established law in Ohio that a plaintiff may recover lost profits in a breach of contract action if "(1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty. *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph two of the syllabus.

█ In *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St.3d 65, 521 N.E.2d 814, syllabus, the Ohio Supreme Court expounded on the third prong of the *Combs* test, stating that "the amount of lost profits, as well as their existence, must be demonstrated with reasonable certainty." Lost profits must be substantiated by calculations based upon facts available or in evidence. *Kinetico, Inc. v. Indep. Ohio Nail Co.* (1984), 19 Ohio App.3d 26, 30, 19 OBR 92, 96, 482 N.E.2d 1345, 1350. In addition, judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579.

The first prong of the *Combs* test requires a consideration of whether the parties contemplated profits at the time the contract was made. Appellant is an established rental business since 1926 operating in fourteen states. It is therefore appropriate to assume that it is a profit-oriented business. It is likewise appropriate to assume that the parties entered into the contract with the

intention to make a profit. Nothing in the record supports an opposite view. Thus, appellant satisfies the first prong of the *Combs* test.

The second prong necessitates an inquiry into whether the lost profits are the probable result of the breach of the contract. A review of the record shows that any lost profits were the direct result of appellee breaching a contract under which appellant was to provide appellee with linen and uniforms at six automobile dealership locations for five years. Therefore, appellant satisfies the second prong.

The third prong requires that profits must not be too remote or speculative and that they be shown with reasonable certainty. In the case at bar, appellant offered the following evidence: (1) the parties' October 19, 1990 contract; (2) a documentary stipulation signed by the parties and which consisted of actual weekly invoices billed to appellee by Cintas Corporation ("Cintas") from October 1990 to September 1994;[1] (3) copies of appellant's annual financial reports from 1986 to 1994; and (4) the testimony of Bruce Colton ("Colton"), appellant's president and twenty-five percent owner.

Appellant's annual financial reports were copies of appellant's accountant's annual financial reports to stockholders and creditors. The reports show appellant's sales and operating expenses, both in dollars and as a percentage of sales, and include a breakdown of fixed and variable costs. The reports were used by Colton to prepare a spreadsheet admitted in evidence breaking down appellant's costs into variable and fixed costs. The reports were also used by Colton at trial to analyze the profitability of the parties' contract.

On direct examination, Colton defined what fixed and variable costs were and gave examples of both types of costs. Colton then explained the impact in general of both types of costs on appellant's profits. Colton stated that although the breach of the contract did not change the dollar figure of fixed costs, it nonetheless had an impact on the fixed costs inasmuch as fixed costs were spread over fewer customers, which in turn lowered profits. Colton defined gross profits as revenue less variable costs and net profits as gross profits less fixed costs.

Colton then testified as to what appellant's gross profit for each year would have been had appellee not breached the contract. For each year of the contract's time period, appellant's total cost was calculated and broken down between variable and fixed costs in percentage. Gross profits were then calculat-

---

1. Shortly after breaching its contract with appellant, appellee entered into a contract with Cintas under which Cintas agreed to supply appellee with linens, uniforms and related supplies and services on a weekly basis for use by appellee at its six automobile dealership locations for sixty months. The foregoing dealership locations were identical to the locations in the parties' contract. In addition, the sixty-month period in the Cintas contract was essentially for the same time period under the parties' contract.

ed by multiplying the percentage of variable costs by each year's sales. The gross profits figure (in percentage) was then applied to each year's revenue, calculated by multiplying the quantities provided in the Cintas invoices by the prices contained in the parties' contract. By using the same calculation method for each year of the contract's five-year period, Colton testified that appellant had suffered a total of $205,546.23 in lost gross profits. Colton further testified that the prices in the parties' contract were "average or above average pricing for these kinds of accounts." Colton stated that he believed the contract would have been very profitable to appellant.

On cross-examination, Colton conceded that he did not do a specific analysis of the direct cost to perform the contract but instead used averages company-wide. Colton also stated that his analysis of the contract's profitability was based upon the assumption that the contract's prices were average for appellant. Colton did not have any documentary evidence to support his opinion that the contract's prices were average. Rather, Colton testified that he was relying on his recollection of what he had seen, as well as his thirty-six years of experience looking at appellant's and competitors' prices. Appellee's counsel tried to impeach Colton by introducing four other contracts with appellant and four proposals by appellant, all of which contained higher prices than the parties' contract. Colton testified on redirect, however, and the record shows that the four contracts were for a much smaller number of employees and that two of the contracts were for a shorter period of time, three years instead of five. With regard to the proposals, Colton testified that they were meaningless because they were preliminary documents which did not take specific customer usage into account.

Rod Veliman, a former sales manager for appellant who had solicited appellee on behalf of appellant, testified that the contract's prices were either average or below average compared to other contracts with appellant. Veliman admitted, however, that in the year and one half he worked for appellant, he had written approximately only six contracts, none of which were as important as the parties' contract. Veliman further admitted that, in bidding on contracts, he never determined pricing and that he did not know how appellant determined prices.

Robert Buck, senior vice-president at Cintas, testified that the parties' contract, if not breached, would not have been profitable for the first three years and would only have yielded insignificant profit over five years. In explaining the foregoing, Buck testified that his analysis was a determination of all the direct costs to perform the contract and that it did not include fixed costs or net profits. Buck admitted that his analysis was based upon the parties' contract prices (which were from 1990) and Cintas's costs from 1995. In another but similar

analysis which also showed losses, Buck again admitted that it was based upon appellant's price from 1990 and Cintas's costs from 1993.

After thoroughly reviewing the record, we conclude that appellant demonstrated lost profits with the required "reasonable certainty." Colton explained how he determined lost profits. While his analysis was based upon average contract prices for which he did not have documentary evidence, his analysis was also based upon a breakdown of appellant's expenses of production, as well as appellant's variable and fixed costs. That part of the analysis was substantiated by Colton's testimony and appellant's financial reports. In addition, the parties' contract provided the pricing while Cintas's invoices to appellee provided specific quantities. We therefore find that the trial court did not err in finding that appellant had proven lost gross profits. Appellee's second cross-assignment of error is overruled.

In its third cross-assignment of error, appellee argues that the trial court erred in holding that the liquidated damages clause was enforceable. Appellee contends that the liquidated damages amount bears no reasonable relationship to the amount of actual damages suffered by appellant and therefore amounts to a penalty.

In *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392, syllabus, the Ohio Supreme Court set forth the test for determining whether a liquidated damages clause is enforceable, as follows:

"Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof."

To determine whether the sum stipulated in the contract is liquidated damages or a penalty, "a court will construe the contract by its four corners in the light of the situation of the parties at the time of the execution of the contract * * *." *Am. Fin. Leasing & Serv. Co. v. Miller* (1974), 41 Ohio App.2d 69, 73, 70 O.O.2d 64, 66, 322 N.E.2d 149, 152, quoting *Miller v. Blockberger* (1924), 111 Ohio St. 798, 146 N.E. 206, paragraph one of the syllabus.

Upon a review of the contract's liquidated damage clause, we find that it meets all the prongs of the *Samson* test. With regard to the first prong, the measure of damages for breach of an agreement would ordinarily be the amount appellee

would have paid appellant under the contract less the expenses appellant would have incurred in performing the contract. However, in the instant case neither the amount that appellant would have received under the contract nor the expenses it would have incurred are certain. The amount received would depend upon appellee's usage and needs. With regard to expenses, while direct expenses might be provable, allocation of expenses would be necessary with respect to both direct and indirect expenses, inasmuch as appellant served other customers in the area. Furthermore, expenses would fluctuate from time to time. The liquidated damages clause thus satisfies the first prong of the *Samson* test.

The second prong of the *Samson* test is whether the amount of liquidated damages[2] is manifestly unreasonable or disproportionate to actual damages. We first note that in a case where no actual damages were proven at trial, an identical liquidated damages provision was found to satisfy the second prong of the *Samson* test. Indeed, in *Domestic Linen Supply & Laundry Co., Inc. v. Caplin* (Oct. 16, 1979), Franklin App. No. 79AP–242, unreported, the court of appeals held:

"Since otherwise unrecovered fixed expenses and profit constitute at least part of that which would be recovered if damages were actually proved, the basis for the liquidated damages appears to be neither unreasonable nor disproportionate to actual damages. There is no indication that a profit of 10 percent or overhead of 30 percent is unreasonable in light of the nature of the business involved."

In the case at bar, the trial court found that appellant had proven actual damages of $152,000 but held that appellant was entitled to recover only $91,354.60 in liquidated damages. We find that in light of the actual damages of $152,000, $91,354.60 in liquidated damages was not so "manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it [did] not express the true intention of the parties * * *." *Samson,* 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392, syllabus. The second prong of the *Samson* test is thus satisfied.

Finally, with regard to the third prong, the record does not show, nor does appellee claim, that it was the intention of the parties that damages in the amount stated should not follow breach of the contract. The contract was between two businesses, clearly set forth the terms of the agreement, was freely entered into after extensive negotiations, and apparently reflected the agreement of the parties. We thus find that the third prong of the test was met. We therefore hold that the trial court properly found the liquidated damages clause under this

---

**2.** As already noted, the amount is forty percent of the minimum weekly delivery charge, or actual weekly billing at the time of termination, whichever is greater, and is agreed to represent thirty percent in overhead and ten percent in profit.

contract to be enforceable. Appellee's third cross-assignment of error is overruled.

■ In its third assignment of error, appellant argues that the trial court erred in failing to award appellant $152,000. Appellant contends that when a plaintiff is required "to assume the burden of proving its common damages, the sum due to the successful plaintiff for damages is the actual sum determined by the court to have been proven by plaintiff in a full trial on the damage[s] issue." We disagree.

We note at the outset that we have not found, nor has appellant cited, any cases supporting its contention. Liquidated damages are, by definition, a "pre-breach" contractual estimation of the actual damages that would probably ensue from a breach of the contract. The parties agree that in the event of a breach, the liquidated damages will be paid.

■ It is well established that "if a valid stipulation is made in the contract for payment of liquidated damages, the amount stipulated becomes the measure of recovery. No further recovery may be had by the complaining party." *Mentor Lagoons, Inc. v. Laity* (May 24, 1985), Lake App. No. 10–184, unreported, 1985 WL 9999. If, on the other hand, the stipulation of liquidated damages is a penalty or absent from the contract, the recovery of the nonbreaching party is limited to actual damages proven. We have already held that the trial court properly found the liquidated damages clause to be enforceable. We therefore find that the liquidated damages clause becomes appellant's sole measure of recovery. The trial court did not err in awarding appellant $91,354.60 rather than $152,000. Appellant's third assignment of error is overruled.

■ In its second assignment of error, appellant argues that the trial court erred in not granting prejudgment interest to appellant continuously from October 23, 1990 (the date of the breach) forward. In its fourth cross-assignment of error, appellee argues that the trial court erred in granting prejudgment interest to appellant. Appellee contends that prejudgment interest is inappropriate "when the full measure of the damages will not accrue until the end of the contract period and that period has not expired."[3]

R.C. 1343.03(A), which provides for prejudgment interest in breach of contract actions, states:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note,

---

**3.** The contract was entered into for a period of sixty months or five years from the date of the contract, October 19, 1990, or the first delivery date, whichever was later. Had it not been breached, the contract would have expired no earlier than October 19, 1995.

or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and *upon all judgments, decrees, and orders* of any judicial tribunal *for the payment of money arising out of* tortious conduct or *a contract* or other transaction, *the creditor is entitled to interest at the rate of ten per cent per annum,* and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." (Emphasis added.)

As a general rule, R.C. 1343.03 is limited to liquidated debts, that is, debts of a sum certain. *Conti Corp. v. Ohio Dept. of Adm. Serv.* (1993), 90 Ohio App.3d 462, 469, 629 N.E.2d 1073, 1078. However, even in the case of unliquidated debts, prejudgment interest may be awarded if the amount is "capable of ascertainment by mere computation, or is subject to reasonably certain calculations by reference to existing market value." *Id.*

The decision of whether prejudgment interest is warranted lies within the sound discretion of the trial court on a case-by-case basis. *LeForge v. Nationwide Mut. Fire Ins. Co.* (1992), 82 Ohio App.3d 692, 704, 612 N.E.2d 1318, 1326. The term "abuse of discretion" connotes more than an error of law or of judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

R.C. 1343.03(A) does not specify when prejudgment interest should begin to run, when it should stop running, or whether it should run continuously. In the case at bar, the trial court explained its decision to award prejudgment interest the way it did as follows:

"In entering its judgment, interest is being awarded from the date of breach until the date of this court's decision on summary judgment due to the creation of an erroneous law of the case. The entering of summary judgment did not change the evidence presented, but did include an additional issue. To charge the defendant with interest for the entire period from the time of breach would be unjust."

We cannot say that the trial court's decision not to award prejudgment interest continuously from the date of the breach forward was so unreasonable, arbitrary or unconscionable as to connote an abuse of discretion. Appellant's second assignment of error is overruled.

■ With regard to appellee's contention that prejudgment interest in a breach of contract action is inappropriate until the end of the contract period when the full measure of damages accrues, we have not found, and appellee has not cited, any cases supporting this contention. As already discussed, under the

contract's liquidated damages clause, appellant was entitled to liquidated damages, which the trial court found to be $91,354.60, upon the breach of the contract by appellee. Having breached the contract only four days after it signed it, appellee cannot reasonably expect that the contract period must expire before prejudgment interest may be awarded. We therefore find that the trial court's award of prejudgment interest to appellant was not an abuse of discretion. Appellee's fourth cross-assignment of error is overruled.

In its fourth assignment of error, appellant argues that the trial court erred in not awarding appellant attorney fees as provided in the contract. We disagree.

Paragraph fifteen of the contract, an arbitration clause, states that "[t]he arbitrator shall include as part of the award all costs including reasonable attorney fees and arbitration expenses of the non-breaching party where it is determined that one of the parties has breached the Agreement." Paragraph six of the addendum to the contract states that "[t]he parties agree all disputes * * * may be submitted to Arbitration upon the agreement of the parties, but in the absence of such an agreement, the aggrieved party is free to seek a remedy at law or in equity."

We agree with the trial court that the foregoing language clearly shows that "the contracted allowance of attorney fees is for a scenario involving arbitration and does not mention litigation * * *." In the case at bar, the parties did not agree to arbitrate their dispute. The trial court therefore properly denied attorney fees to appellant. Appellant's fourth assignment of error is overruled.

In its fifth assignment of error, appellant argues that the trial court erred in overruling appellant's motion for a new trial on the issues of (1) the trial court's calculation of prejudgment interest, (2) the amount of the judgment in favor of appellant, and (3) appellant's contractual right to attorney fees. In its fifth cross-assignment of error, appellee argues that the trial court erred in overruling appellee's motion for a new trial. Appellee contends that a discovery ruling and another pretrial ruling by the trial court limited appellee's access to crucial evidence. Appellee contends that as a result, its "potential liability greatly expanded without the full means of defending itself against [appellant's] damages claim * * *." Appellee also argues that the trial court erred in failing to grant appellee's request for separate findings of fact and conclusions of law.

Civ.R. 59 governs new trials and states:

"(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

"(1) Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

"(2) Misconduct of the jury or prevailing party;

"(3) Accident or surprise which ordinary prudence could not have guarded against;

"(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

"(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

"(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same cause;

"(7) The judgment is contrary to law;

"(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

"In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.

"When a new trial is granted, the court shall specify in writing the grounds upon which such new trial is granted.

"On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment."

As a general rule, the decision to grant a motion for a new trial lies within the sound discretion of the trial court, and that ruling will not be disturbed on appeal absent a showing that the trial court abused its discretion. *Malone v. Courtyard by Marriott L.P.* (1994), 95 Ohio App.3d 74, 90, 641 N.E.2d 1159, 1170. "Abuse of discretion" in ruling on a motion for a new trial connotes an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. *Id.*

After reviewing the record, we find that the trial court properly denied appellant's motion for a new trial. With regard to appellant's contractual right to attorney fees, we have already held that this right would not arise unless the parties agreed to arbitration. The parties did not agree to arbitration. The trial

court's denial of appellant's motion for a new trial regarding attorney fees was therefore not an abuse of discretion.

With regard to the trial court's calculation of prejudgment interest, we have already held that the trial court did not abuse its discretion in granting prejudgment interest the way it did. In denying appellant's motion for a new trial, the trial court held that "[p]laintiff further argues for re-opening the evidence due to alleged error in the court's granting of interest. The court, again, has reached its conclusion by inserting its sense of equity under the evolution of the rulings of this case." The trial court's denial of appellant's motion for a new trial regarding prejudgment interest was not so unreasonable, arbitrary or unconscionable as to connote an abuse of discretion.

With regard to the trial court's damages award, it is well established that a trial court's denial of a motion for a new trial based upon an allegedly insufficient damages award will not be reversed on appeal unless the trial court abused its discretion. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus. In the case at bar, we have already held that the trial court properly found the contract's liquidated damages clause to be enforceable and appellant's sole measure of recovery. We therefore find that the trial court's denial of appellant's motion for a new trial regarding the damages award was not an abuse of discretion. Appellant's fifth assignment of error is overruled.

We now turn to the trial court's denial of appellee's motion for a new trial. In November 1991, appellee filed a request for production of documents addressed to appellant. Appellee's request specifically asked appellant to provide "copies of all of [appellant]'s Uniform Rental Agreements entered into with any automobile dealer in the metropolitan areas of Cincinnati, Dayton, and Columbus, Ohio, and Indianapolis, Indiana." On March 30, 1992, the trial court granted appellant's motion for protective order, holding that appellant only had to turn over contracts with automobile dealerships from the Cincinnati–Dayton areas for the years 1989 and 1990. As a result, appellee was able to discover only one uniform rental contract, a contract with Busam Nissan.

In an entry filed December 7, 1992, the trial court granted partial summary judgment to appellee with regard to the contract's liquidated damages clause. The trial court held that since appellant had taken no action to begin carrying through on its obligations under the contract, the liquidated damages clause was penal in nature and thus unenforceable. Therefore, the trial court ruled, "[t]o allow recovery of fixed costs * * * in this case would amount to a penalty to [appellee] and a windfall to [appellant]." At trial, appellee's counsel objected to appellant's counsel's claim to fixed costs in his opening statement and moved for

dismissal. The trial court granted appellee a continuing objection to any testimony regarding fixed costs. The trial court thereafter allowed appellant to introduce evidence regarding its fixed costs. The trial court had, however, never overruled its December 7, 1992 finding that fixed costs were not recoverable.

We find that the fact that the trial court never overruled its holding regarding fixed costs did not warrant a new trial. The trial court made that particular holding when it granted partial summary judgment to appellee based upon the unenforceability of the liquidated damages clause. In explaining why it then believed that the liquidated damages clause was unenforceable, the trial court stated that there was no evidence of fixed costs as "there was no actual outlay of expense changing [appellant]'s position from the day before the contract until the day after the contract * * *." The trial court's holding was subject to modification based upon evidence presented at trial. At trial, appellant introduced evidence of its lost gross profits, including fixed costs, subject to appellee's continuing objection. Such evidence did not exist at the time the trial court ruled on the parties' motions for summary judgment. In light of the foregoing, it was not an abuse of discretion for the trial court to deny appellee's motion for a new trial.

With regard to the trial court's March 30, 1992 discovery holding, it is well established that motions for a new trial are also subject to the harmless error rule as set forth in Civ.R. 61:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial judice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

After reviewing the record, we find that the trial court's ruling excluding from evidence copies of appellant's contracts with other automobile dealerships in the Columbus, Ohio and Indianapolis, Indiana areas did not warrant a new trial. It is undisputed that as a result of the trial court's ruling, appellee was able to discover only one contract, the Busam Nissan contract. However, the record shows that appellee obtained through independent means four other contracts with appellant and four contemporaneous proposals by appellant, all of which appellee used in its cross-examination of Bruce Colton, appellant's president. We therefore find that appellee's substantial rights were not violated and that the trial court's denial of appellee's motion for a new trial was not an abuse of discretion.

Under its fifth cross-assignment of error, appellee also argues that the trial court erred in overruling appellee's request for separate findings of facts and conclusions of law with regard to the trial court's finding that appellant had proven damages in the amount of $152,000.

Civ.R. 52 provides:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

" * * *

"An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule and Rule 41(B)(2)."

 The purpose of separately stated findings of facts and conclusions of law is to enable a reviewing court to determine the existence of assigned error. *Abney v. W. Res. Mut. Cas. Co.* (1991), 76 Ohio App.3d 424, 431, 602 N.E.2d 348, 352. If the court's opinion, together with other parts of the trial court's records, provides an adequate basis upon which a reviewing court can decide the legal issues presented, there is substantial compliance with Civ.R. 52. *Id.* After thoroughly reviewing the record and the trial court's written decision, we find that they provide this court with an adequate basis upon which to decide the assignments of error presented. Appellee's fifth cross-assignment of error is therefore overruled.

In its first assignment of error, appellant argues that the trial court erred in denying summary judgment to appellant with regard to the contract's liquidated damages clause. Our disposition regarding appellee's third cross-assignment of error renders any further consideration of appellant's first assignment of error unnecessary. Accordingly, appellant's first assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.