OPINION
{¶ 1} Appellants appeal from the November 10, 2003, Judgment Entry and Findings of Fact and Conclusions of Law issued after their bench trial in Mahoning County Court No. Five, in Canfield, Ohio.
 {¶ 2} This lawsuit involves the unlawful sale of securities. The trial court found in favor of Appellee and found that Appellants' claims lacked merit. Because the record and law in this matter reflect that Appellee sold unregistered securities contrary to R.C. § 1707.44(C)(1), the trial court's decision is hereby reversed.
 {¶ 3} Appellants, David and Marge Emick, purchased a promissory note in the amount of $11,271.61 from Appellee, Edward Hawkins, in June of 1997. Appellee, doing business as Edward Hawkins and Associates, sold insurance and investment products. Appellee was licensed at the time by the Ohio Securities Division of the Department of Commerce to sell mutual funds through a securities broker dealer.
 {¶ 4} The World Vision Entertainment Company issued the note Appellants purchased from Appellee. This original note matured nine months after the purchase date and accrued 10.9% interest. Appellants were advised by Appellee that they would get their money back if the issuer defaulted since it was guaranteed by the Global Insurance Company. (Trial Tr. pp. 58-59.)
 {¶ 5} Appellants again met with Appellee in 1999, and everyone agreed that Appellants' investment would be transferred to a different investment product, Capital Communities Corporation, but this transfer did not occur. (Trial Tr. p. 65.) The original promissory note was instead rolled over into another World Vision Entertainment Company promissory note with an initial principal value of $13,114.45 without Appellants' authorization. (Trial Tr. p. 65.)
 {¶ 6} In October of 1999, Appellants learned that World Vision Entertainment petitioned for bankruptcy in Florida. It subsequently defaulted on Appellants' promissory note.
 {¶ 7} Appellants filed suit asserting three causes of action against Appellee. First, Appellants requested to rescind their security purchase since Appellee was in violation of Ohio's Securities Act based on his sale of an unregistered security under R.C. § 1707.01 et. seq.
 {¶ 8} Second, Appellants sought to recover under a negligence theory alleging that Appellee failed to use the necessary due care and skill in purchasing the security on Appellants' behalf; in failing to disclose the risk involved and the nature of the investments as high risk as compared to Appellants' stated low risk objectives; and in failing to execute the subsequent sale of the different investment vehicle as directed by Appellants.
 {¶ 9} Third and finally, Appellants asserted that Appellee breached his fiduciary duty in failing to exercise the requisite skills and responsibility required while working on Appellants' behalf and in failing to carry out Appellants' stated low-risk objectives.
 {¶ 10} Appellants claim that they are entitled to a full refund of their original purchase price less the payments made by the settling co-defendant, Security Management Research. As Appellee has failed to file a brief in this case, this Court may accept Appellants' statement of facts and issues as correct and reverse the judgment if their brief reasonably appears to sustain such action. App. R. 18(C).
 {¶ 11} The case proceeded to bench trial on June 27, 2003, on all three causes of action. The trial court found in favor of Appellee, as set forth in its August 1, 2003, Judgment Entry. Thereafter, Appellants requested findings of facts and conclusions of law, which were issued on November 10, 2003. Appellants appeal from the trial court's November 10, 2003, Findings of Fact and Conclusions of Law and raise three assigned errors.
 {¶ 12} Appellants' first assigned error states:
 {¶ 13} "The finding [SIC] of the trial court are contrary to law, against the weight of the evidence and constitute reversible error."
 {¶ 14} Appellants' first assigned error consists of four specified sub-issues. Sub-issue A asserts:
 {¶ 15} "A. Finding no. 7 is Contrary to O.R.C. Section 1707. et seq."
 {¶ 16} The trial court's Finding Number Seven provides: "There may have been a violation of Ohio's Securities Act but that does not establish liability on the part of the [Appellee]."
 {¶ 17} This sub-issue concerns Appellants' request for the return of their original $11,271.61 investment pursuant to R.C. §1707.43. The R.C. Chapter 1707 provisions are, "remedial in nature, and have been drafted broadly to protect the investing public from * * * unscrupulous securities dealers." In reColumbus Skyline Securities, Inc, 74 Ohio St.3d 495, 498,660 N.E.2d 427.
 {¶ 18} Appellants seek a return of their initial investment amount under R.C. § 1707.43:
 {¶ 19} "(A) * * * every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision."
 {¶ 20} Thus, Appellants must establish a violation of Chapter 1707 to recover their full purchase price. R.C. § 1707.43.
 {¶ 21} Appellee allegedly violated R.C. § 1707.44(C)(1) by selling unregistered securities. The Ohio Supreme Court has held that failure to comply with R.C. § 1707.44(C)(1), "materially affects the protection contemplated by that provision and entitles a purchaser of unregistered securities to the relief provided under R.C. 1707.43" as a matter of law. Pencheff v.Adams (1983), 5 Ohio St.3d 153, 449 N.E.2d 1277, Blue Sky L. Rep. P 71, 834, 5 O.B.R. 318, syllabus. In rendering this decision, the Supreme Court stressed the underlying purpose of these provisions, which is to prevent the marketing of worthless or unnecessarily risky securities without sufficient licensing and registration in order to protect the purchasing public from its own gullibility. Id. at 154.
 {¶ 22} R.C. § 1707.44(C) currently provides:
 {¶ 23} "(C) No person shall knowingly sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:
 {¶ 24} "(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in section 1707.03, 1707.04, or 1707.34 of the Revised Code, has not been registered by coordination or qualification, and is not the subject matter of a transaction that has been registered by description;"
 {¶ 25} This version of R.C. § 1707.44(C) was not effective until June 18, 2002, but the sales to Appellants at issue here occurred in 1997 and in 1999. Thus, we must turn to the applicable version of R.C. § 1707.44(C), which governs the instant case. The earlier version of the statute included the words "and intentionally" after the word knowingly, thus prohibiting one from "knowingly and intentionally selling" a non-exempt or unregistered security.
 {¶ 26} Notwithstanding, the essential elements of an R.C. §1707.44(C) violation applicable in the instant cause have been established: "(1) an unregistered security, (2) intentionally sold by defendants, and (3) which defendants knew, or in the exercise of reasonable diligence should have known, to be unregistered." Chiles v. M.C. Capital Corporation (1994),95 Ohio App.3d 485, 496, 642 N.E.2d 1115, Blue Sky L. Rep. P 74, cert. denied (1994) 71 Ohio St.3d 1404, 641 N.E.2D 202, citingState v. Trivedi (1982), 8 Ohio App.3d 412, 8 OBR 534,457 N.E.2d 868.
 {¶ 27} Further, the lack of an applicable exemption is not an element of the offense, but an affirmative defense that must be proven by the defendant. Id. citing State v. Frost (1979),57 Ohio St.2d 121, 11 O.O.3d 294, 387 N.E.2d 235.
 {¶ 28} Finally, the knowledge requirement found in R.C. §1707.44(C) must be read in conjunction with R.C. § 1707.29, which provides that one is, "deemed to have had knowledge of any matter of fact, where in the exercise of reasonable diligence, he should, prior to the alleged commission of the offense in question, have secured such knowledge." Chiles,95 Ohio App.3d at 496, 642 N.E.2d 1115, Blue Sky L. Rep. P 74, 018. R.C. §1707.29 effectively defines the R.C. § 1707.44(C)(1) "knowingly" element, "more in terms of `negligently' than knowingly." Statev. Walsh (1979), 66 Ohio App.2d 85, 95, 20 O.O.3d 178,420 N.E.2d 1013. This imposes a duty of reasonable inquiry on securities salespersons. Trivedi supra, at 414.
 {¶ 29} "Thus, a person violates R.C. 1707.44(C)(1) if the person sells unregistered securities which the person knows, or through the exercise of reasonable diligence should know, are unregistered." Chiles, 95 Ohio App.3d at 487, 642 N.E.2d 1115, Blue Sky L. Rep. P 74, 018, citing Trivedi, supra,8 Ohio App.3d at 414.
 {¶ 30} In the case at bar, it is undisputed that Appellee sold a non-exempt and unregistered security to Appellants. Pursuant to R.C. § 1707.01(B),
 {¶ 31} "`Security' means any certificate or instrument, or any oral, written, or electronic agreement, understanding, or opportunity, that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes * * * promissory notes, * * *."
 {¶ 32} Under R.C. § 1707.44(C), Appellee should have been held responsible based on the applicable definition of "knowingly". The testimony reveals that Appellee's initial contact relative to World Vision Entertainment Company was based on an advertisement Appellee saw in an insurance magazine. (Trial Tr. p. 54.) When he made inquiry, he was contacted to sell "notes" issued by that company. Appellee asked the selling company whether these notes constituted securities, and he was advised that they did not. (Trial Tr. pp. 52-53.)
 {¶ 33} Appellee never inquired about the selling company's financial performance, and he did not contact the Ohio Division of Securities to inquire whether these "notes" were securities. (Trial Tr. pp. 54-55.) He testified at hearing, "I guess I wasn't bright enough to do that." (Trial Tr. p. 55.) Further, he did not check the Ohio Revised Code definition of security because he, "[d]idn't even know there was a[n] Ohio Revised Code." (Trial Tr. p. 55.)
 {¶ 34} Appellee's agreement with his broker dealer required him to secure approval of all securities he sold with the company's compliance department, but he never sought approval to sell these notes since he claims that he did not know they constituted securities. (Trial Tr. pp. 56-57.) At trial, however, Appellee testified that he now knows it was a security. (Trial Tr. p. 58.) Appellee also never checked to see if the World Vision Entertainment Company's notes were registered securities. (Trial Tr. p. 64.) Appellant's expert testified at trial that had Appellee done any research, he would have known these notes constituted unregistered securities.
 {¶ 35} In addition, Appellee admitted in cross-examination that he recommended that Appellants roll over their World Vision Entertainment Company note after the initial investment's nine-month maturity based on his suspicion that the company was substandard. (Trial Tr. p. 65.) But this rollover never occurred because World Vision Entertainment Company claimed that they never received the paperwork. (Trial Tr. p. 65.)
 {¶ 36} Based on the foregoing, Appellants' first assigned error has merit. The trial court's finding that even if there exists a violation of Ohio's Security Act, such violation does not establish liability on the part of Appellee is incorrect. A violation of R.C. § 1707.44(C) does indeed entitle the purchasers to void the sale of the unregistered security, and it operates to hold the salesperson responsible.
 {¶ 37} Appellee violated R.C. § 1707.44(C) as a matter of law in intentionally selling the unregistered promissory note to Appellants. Based on the record before us, there was a clear failure on the part of Appellee to exercise reasonable diligence. Appellee did not inquire with the State of Ohio or even his own broker dealer pursuant to his contractual agreement to determine whether these "notes" constituted securities, and then, whether they were registered. Based on the foregoing, Appellants are entitled to void their initial purchase pursuant to R.C. §1707.43(A). Thus, Appellants' first assigned sub-issue is sustained.
 {¶ 38} Appellants' sub-issue B under this assigned error asserts:
 {¶ 39} "B. Weight of the evidence does not support findings No. 9 and 10."
 {¶ 40} Finding Number Nine provides: "The investigative efforts by the [Appellee], prior to and at the time of sale of the investments, did not amount to negligence." Appellants' negligence assertions are founded on Appellee's failure to disclose the nature of the investments; failure to disclose the notes' risks; failure to follow Appellants' requests for low-risk investments; and failure to roll over the initial investment into another investment vehicle as agreed. Based on our interpretation of the relevant statutory sections above, this assignment is moot.
 {¶ 41} The trial court's Finding Number Ten concludes that Appellee, "never issued a guarantee of income or success to," Appellants. The evidence reveals that Appellee advised Appellants that the, "promissory note [was] guaranteed by an insurance company that he [Appellant] wouldn't lose his money if it went default. " (Trial Tr. pp. 58-59.) However, Appellee never checked with the insurance companies that were supposed to be backing these notes. (Trial Tr. p. 59.) Again, based on our review of Appellants' first argument, this assignment is moot.
 {¶ 42} Appellants' sub-issue C asserts:
 {¶ 43} "C. Finding No. 11 is Contrary to Law Prejudicial Error."
 {¶ 44} The trial court's Finding Number Eleven provides that Appellants' "losses were attributable to the bankruptcy of World Vision Entertainment Inc., not through any fault of the Defendant." This finding is in error since Appellants would not have purchased these notes had Appellee exercised due diligence in confirming the notes' status as unregistered securities. Since we have held that Appellee failed to exercise due diligence contrary to R.C. § 1707.44(C), we have agreed with Appellants and this sub-issue will not be addressed.
 {¶ 45} Appellants' final sub-issue under his first assigned error asserts:
 {¶ 46} "D. Finding 12 is unsupported by the evidence of Record."
 {¶ 47} Finding Number Twelve provides: "Had Plaintiff followed [Appellee's] advice and suggestion to make a different investment and cash in the World Vision Entertainment notes, he would not have suffered a loss through the bankruptcy proceedings."
 {¶ 48} Appellants are correct in their assertion that this finding is contrary to the evidence. In fact, Appellee's testimony on cross-examination reveals the following:
 {¶ 49} "Q And is that why you advised them of the move to get them out of one investment into another?
 {¶ 50} "A Yes, I had a suspicion.
 {¶ 51} "Q So why was the investment not made in Capital Communities?
 {¶ 52} "A Well, therein lies the problem. I went into [Appellants'] house, and we decided to roll it over into the Capital development. I sent all of the stuff to R and D Marketing. About three months went by, and usually that's about normal. And I hadn't heard anything. So I called * * *. And [he] said, well, gee, Ed, I never received the stuff. * * * So then I called down to World Vision. And * * * a guy * * * said, we don't need to return his money, and he hung up on me. * * *" (Trial Tr. pp. 65-66.)
 {¶ 53} The trial court's Finding Number Twelve is unsupported by the record and Appellants' claims in this regard are correct.
 {¶ 54} Based on the foregoing, the trial court's Findings Numbered Seven, and Twelve are in error. While Findings Nine, Ten and Eleven are also erroneous, Appellants' arguments are addressed in our discussion of Finding Seven. The trial court's judgment as to this matter is reversed.
 {¶ 55} Appellants' second assignment of error provides:
 {¶ 56} "The findings of fact and conclusions of law of the trial court are not separately stated as required by ohio civil rule 52 resulting in a lack of clarity in determing how the trial court applied the law to the facts."
 {¶ 57} Appellants timely requested findings of fact and conclusions of law pursuant to Civ. R. 52 following their trial to the court. Civ. R. 52 provides in pertinent part that, "the court shall state in writing the conclusions of fact found separately from the conclusions of law." In the instant matter, the factual findings and legal conclusions were not separated as required by Civ. R. 52.
 {¶ 58} However, it has been held in Ohio that if there is an adequate basis for an appellate court to review the pertinent legal issues via the judgment and the trial court's record, then there is substantial compliance with Civ. R. 52. In re Fetzer
(1997), 118 Ohio App.3d 156, 163, 692 N.E.2d 219, cert. denied78 Ohio St.3d 1513, 679 N.E.2d 309; Domestic Linen Supply LaundryCo. v. Kenwood Dealer Group, Inc. (1996), 109 Ohio App.3d 312,328, 672 N.E.2d 184, cert. denied 75 Ohio St.3d 1446,663 N.E.2d 327. Based on a review of the trial court's November 10, 2003, Findings of Fact and Conclusions of Law together with the trial transcript, the relevant factual findings and legal conclusions are discernable on appellate review.
 {¶ 59} Based on the foregoing, Appellants' second assignment is overruled.
 {¶ 60} Appellants' third and final assigned error argues:
 {¶ 61} "THE TRIAL COURT ERRED IN EXCLUDING PLAINTIFF'S EXPERT WITNESS DURING TRIAL TESTIMONY."
 {¶ 62} Appellants' expert witness, Theodore Dumas, is a securities expert. Appellants sought to have Dumas testify based on and after the other trial witnesses' testimony. Appellee's counsel objected requesting separation of witnesses. Counsels' arguments were heard, and the trial judge excluded the expert during the other witnesses' testimony. (Trial Tr. pp. 4-7.)
 {¶ 63} Under Evid. R. 615, exclusion of witnesses, Appellants' counsel asserted that Dumas' presence during trial was essential to the presentation of his cause. (Trial Tr. pp. 6-7.) Evid. R. 615 provides:
 {¶ 64} "(A) Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. * * *
 {¶ 65} "(B) This rule does not authorize exclusion of any of the following persons from the hearing:
 {¶ 66} "* * *
 {¶ 67} "(3) a person whose presence is shown by a party to be essential to the presentation of the party's cause; * * *."
 {¶ 68} Appellants' counsel argued that Dumas' presence was necessary for Dumas to obtain a clear understanding of Appellee's conduct and to provide his expert opinion relative to this conduct. (Trial Tr. pp. 5-7.) The trial court, however, sustained the motion to separate the witnesses, recognizing counsel's opportunity to present hypothetical questions on direct examination. (Trial Tr. p. 7.)
 {¶ 69} The decision to separate witnesses, including expert witnesses, is in the discretion of the trial court. Village ofOakwood v. Makar (1983), 11 Ohio App.3d 46, 463 N.E.2d 61,11 O.B.R. 79. Since the trial court in the instant cause concluded that Dumas could adequately testify based on hypothetical questions, its decision to remove him from the courtroom during the other witnesses' testimony was not clearly arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 70} Based on the foregoing, Appellants' third assigned error lacks merit and is overruled.
 {¶ 71} In conclusion, Appellants' first assigned error is sustained since Appellee sold an unregistered security contrary to R.C. § 1707.44(C). Appellants' second and third assigned errors are overruled. This Court reverses the trial court's decision and enters judgment in favor of Appellants. This cause is remanded to the trial court for an award of damages to Appellants pursuant to R.C. § 1707.43.
Vukovich, J., concurs.
DeGenaro, J., concurs.